## VELLA *v.* FORD MOTOR CO.

No. 73–1994.   Argued February 18–19, 1975—
Decided April 15, 1975

BRENNAN, J., delivered the opinion for a unanimous Court.

*Leonard C. Jaques* argued the cause and filed a brief for petitioner.

*John A. Mundell, Jr.,* argued the cause and filed a brief for respondent.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

We granted certiorari in this case limited to the question whether a shipowner's duty to furnish an injured seaman maintenance and cure continues from the date

1

the seaman leaves the ship to the date when a medical diagnosis is made that the seaman's injury was permanent immediately after his accident and therefore incurable.[1] 419 U. S. 894 (1974).

Petitioner was a seaman aboard respondent's Great Lakes vessel, S. S. *Robert S. McNamara*. He was discharged and left the ship on June 29, 1968. Thereafter he filed this suit in the District Court for the Eastern District of Michigan, Southern Division, based on a claim that on April 4, 1968, while replacing a lower engineroom deck plate, he slipped and fell on the oily floor plate causing his head to suffer a severe blow when it struck an electrical box. The complaint included a count, among others,[2] for maintenance and cure. The medical testimony at the trial was that petitioner suffered from a vestibular disorder defined as damage to the balancing mechanism of the inner ear. The testimony of respondent's medical witness, Dr. Heil, an otolaryngologist, supplied the only medical diagnosis as to the time when the disorder became permanent and not susceptible of curative treatment. Dr. Heil testified on April 27, 1972, that he had recently examined petitioner. He conceded that

---

[1] This question is subsumed in Question I presented in the petition for writ of certiorari:

"Is a disabled seaman who contracted by trauma a permanent disease while in the service of a vessel entitled to maintenance and cure payments during the interim between the period the incident occurred and the time the disease was medically diagnosed and proclaimed incurable?"

[2] Petitioner also sought damages under counts founded on the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, and on unseaworthiness under general maritime law. The Court of Appeals affirmed the judgment in favor of respondent entered on a jury verdict of no cause for action on either count. We denied review of the judgment of the Court of Appeals in respect of that affirmance when we denied the petition for writ of certiorari as respects Question II presented in the petition.

a severe blow to the head, such as alleged by petitioner, could have caused the disorder. He said, however, that the disorder is not a condition that can be cured by treatment.[3] The jury awarded petitioner maintenance and cure in the amount of $5,848. Respondent moved for a judgment notwithstanding the verdict on the ground that the award was not within the permissible scope of maintenance and cure. The District Court denied the motion and stated: "While it is true that maintenance and cure is not available for a sickness declared to be permanent, it is also true that maintenance and cure continues until such time as the incapacity is declared to be permanent." App. 20a. The Court of Appeals for the Sixth Circuit reversed without a published opinion, 495 F. 2d 1374 (1974). The Court of Appeals held that "once the seaman reaches 'maximum medical recovery,' the shipowner's obligation to provide maintenance and cure ceases," App. 28a, and since "[t]he record in this case does not permit an inference other than that [petitioner's] condition was permanent immediately after the accident," id., at 29a, the District Court's holding impermissibly extended the shipowner's obligation.

We disagree with the Court of Appeals and therefore reverse. The shipowner's ancient duty to provide maintenance and cure for the seaman who becomes ill or is injured while in the service of the ship derives from the "unique hazards [which] attend the work of seamen," and fosters the "combined object of encouraging marine com-

---

[3] When asked whether petitioner might be cured by treatment, Dr. Heil testified:

"No, not really. Treatment is primarily symptomatic for this condition. That is, people with a vestibular disorder are apt to have intermittent episodes of dizziness which, on occasion, are somewhat more severe. Treatment is limited to those times when the patient is particularly dizzy. They can obtain some symptomatic relief with medication. Other than that, there is no specific cure or treatment."

merce and assuring the well-being of seamen." *Aguilar* v. *Standard Oil Co.,* 318 U. S. 724, 727 (1943). To further that "combined object" we have held that the duty arises irrespective of the absence of shipowner negligence and indeed irrespective of whether the illness or injury is suffered in the course of the seaman's employment. *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525, 527 (1938). And, "[s]o broad is the shipowner's obligation, . . . negligence or acts short of culpable misconduct on the seaman's part will not relieve [the shipowner] of the responsibility." *Aguilar* v. *Standard Oil Co., supra,* at 730–731. Thus, the breadth and inclusiveness of the shipowner's duty assure its easy and ready administration for "[i]t has few exceptions or conditions to stir contentions, cause delays, and invite litigations." *Farrell* v. *United States,* 336 U. S. 511, 516 (1949).

Denial of maintenance and cure when the seaman's injury, though in fact permanent immediately after the accident, is not medically diagnosed as permanent until long after its occurrence would obviously disserve and frustrate the "combined object of encouraging marine commerce and assuring the well-being of seamen." A shipowner might withhold vitally necessary maintenance and cure on the belief, however well or poorly founded, that the seaman's injury is permanent and incurable. Or the seaman, if paid maintenance and cure by the shipowner, might be required to reimburse the payments, if it is later determined that the injury was permanent immediately after the accident. Thus uncertainty would displace the essential certainty of protection against the ravages of illness and injury that encourages seamen to undertake their hazardous calling. Moreover, easy and ready administration of the shipowner's duty would seriously suffer from the introduction of complexities and uncertainty that could "stir contentions, cause delays, and invite litigations."

The Shipowners' Liability Convention, made effective for the United States on October 29, 1939, *Farrell* v. *United States, supra,* at 517, buttresses our conclusion that the District Court correctly held that "maintenance and cure continues until such time as the incapacity is declared to be permanent." [4] That holding tracks the wording of Art. 4, ¶ 1, of the Convention which provides: "The shipowner shall be liable to defray the expense of medical care and maintenance until the sick or injured person has been cured, *or until the sickness or incapacity has been declared of a permanent character."* 54 Stat. 1696. (Emphasis supplied.) The aim of the Convention "was not to change materially American standards but to equalize operating costs by raising the standards of member nations to the American level."

---

[4] On this record maintenance and cure could have been claimed to continue from June 29, 1968, the date petitioner left the vessel, to April 27, 1972, the date Dr. Heil testified that the vestibular disorder was permanent immediately after the accident and not susceptible of curative treatment. The jury, however, awarded petitioner maintenance and cure at $8 per day only for the period from June 29, 1968, to June 29, 1970. Petitioner's appeal to the Court of Appeals did not, however, draw into question a claim of entitlement to maintenance and cure for the longer period. App. 25a. In that circumstance petitioner is not entitled to the relief respecting the longer period sought by him in this Court, Brief for Petitioner 19. See *Le Tulle* v. *Scofield,* 308 U. S. 415, 421–422 (1940). Moreover, in light of our holding that the shipowner's duty continued until Dr. Heil's testimony, it is not necessary to address the question whether the jury award might also be sustained on the ground that the shipowner's duty in any event obliged him to provide palliative medical care to arrest further progress of the condition or to reduce pain, and we intimate no view whatever upon the shipowner's duty in that regard. Compare *Ward* v. *Union Barge Line Corp.,* 443 F. 2d 565, 572 (CA3 1971), with the opinion of the Court of Appeals in this case. App. 29a n. 1. Nor do we express any view whether a seaman may forfeit his right to maintenance and cure by not reporting a known injury or malady, or by refusing from the outset to allow proper medical examination, or by discontinuing medical care made available.

*Warren* v. *United States,* 340 U. S. 523, 527 (1951). Thus Art. 4, ¶ 1, is declaratory of a longstanding tradition respecting the scope of the shipowner's duty to furnish injured seamen maintenance and cure,[5] *Farrell* v. *United States, supra,* at 518, and therefore the District Court's interpretation was correct.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[5] See *Desmond* v. *United States,* 217 F. 2d 948, 950 (CA2 1954): "The shipowner is liable for maintenance and cure only until the disease is cured *or recognized as incurable*" (emphasis supplied); *Vitco* v. *Joncich,* 130 F. Supp. 945, 949 (SD Cal. 1955), aff'd, 234 F. 2d 161 (CA9 1956): "The shipowner's obligation to furnish maintenance is coextensive in time with his duty to furnish cure . . . and neither obligation is discharged *until the earliest time when it is reasonably and in good faith determined by those charged with the seaman's care and treatment that the maximum cure reasonably possible has been effected*" (emphasis supplied).

It is therefore unnecessary to address the conflict between commentators whether the Convention is applicable to Great Lakes shipping. Compare G. Gilmore & C. Black, The Law of Admiralty 323 (2d ed. 1975) ("Evidently the Convention was not to apply to . . . Great Lakes shipping"), with 4 E. Benedict, Admiralty 296 (6th ed. 1940) ("[T]he Convention would seem to apply to the Great Lakes, which are not 'inland waters' in the usual sense . . ."). The United States' reservation to the Convention provides: "[T]he United States Government understands and construes the words 'maritime navigation' appearing in this Convention to mean navigation on the high seas only." 54 Stat. 1704.