BELCHER TOWING
COMPANY, Plaintiff,

v.

William Richard HOWARD, Defendant.

No. 85 3335–CIV.

United States District Court,
S.D. Florida,
Miami Division.

June 27, 1986.

David Horr, Miami, Fla., for plaintiff.

Arthur Roth, Miami, Fla., for defendant.

## MEMORANDUM DECISION

SCOTT, District Judge.

### INTRODUCTORY AND FACTUAL BACKGROUND

This dispute originated from a series of shipboard injuries sustained by Defendant, William Richard Howard in April, 1981. At that time, Howard was a seaman employed by Plaintiff, Belcher Towing Company.

This series of injuries precipitated a lawsuit by William Richard Howard against Belcher Towing Company seeking recovery under the Jones Act and the general maritime law for maintenance and cure. The initial lawsuit was resolved by settlement in October, 1984. Howard received $85,-000.00 in exchange for a release of his Jones Act and general maritime claims and all items recoverable thereunder. The release also contemplated discharge of Howard's claims for past maintenance and cure. The release did not extend to Howard's right to future maintenance and cure.

Belcher Towing Company has provided Howard maintenance and cure since the shipboard incidents in April, 1981. His injuries were essentially soft tissue in nature. The symptoms are subjective complaints of pain in the neck and back. At that point, the Defendant embarked on a medical odyssey consisting of hospitalizations and treatment by physicians and chiropractors. To date, Howard has been seen or treated by approximately nineteen doctors and received therapy from approximately seven different sources.

This course of treatment has been paid for by Belcher as cure. During this course, Howard has been receiving

$22.00/day as maintenance. Since 1981, Belcher has expended over $87,000 in maintenance and cure for William Richard Howard. The expenditures are broken down as follows:

| | |
|---|---|
| Doctors: | $21,233.00 |
| Therapy: | 28,154.00 |
| Hospital: | 5,130.00 |
| Maintenance: | 33,463.00 |
| Total: | $87,981.00 [1] |

Belcher has been advised by several of the physicians who have treated Howard that he has reached a plateau of maximum medical improvement or maximum cure, and further medical care or therapy is no longer necessary. This opinion was expressed by Dr. W. Scott Piper, an orthopedist; Dr. Donald Dooley, a neurosurgeon; Dr. Paul S. Jarrett, a psychiatrist; and Dr. Laurence Guido, also a neurosurgeon.

Notwithstanding this evidence, Howard or his physicians/therapists continue to submit bills for medical treatment. Howard also claims he is entitled to continue the maintenance stipened of $22.00/day.

This background brings us up to the current controversy. This case presents a unique situation where the Plaintiff, Belcher Towing Company, seeks to determine whether it is obligated to pay further cure and maintenance to the Defendant, William Richard Howard.

## APPLICABLE LAW

A seaman's right to maintenance and cure is implicit in the contractual relationship between the seaman and his employer. *Pelotto v. L & N Towing Co.,* 604 F.2d 396, 400 (5th Cir.1979). However, it is not an open-ended duty. The obligation to provide maintenance and cure ends at the point of maximum cure. *See, also, Stewart v. Waterman S.S. Corp.,* 288 F.Supp. 629 (E.D.La.1968), *aff'd* 409 F.2d 1045 (5th Cir.1969).

The issue is, therefore, which standard should be applied in determining when maximum cure is achieved. Plaintiff asserts that the standard is reasonable probability of certainty. Defendant Howard counters arguing that the test is reasonable possibility. In light of the remedial nature of the law favoring the seaman, it is easy to glean that the Defendant is correct. This determination is supported by the latest pronouncement of the United States Supreme Court in *Vella v. Ford Motor Co.,* 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975). In *Vella,* 421 U.S., at 5, footnote 5, 95 S.Ct., and 1384, footnote 5, the Court adopted language from *Vitco v. Joncich,* 130 F.Supp. 945 (S.D.Cal.1955), aff'd, 234 F.2d 161 (9th Cir.1956):

> "The shipowner's obligation to furnish maintenance is co-extensive in time with the duty to furnish care ... and neither obligation is discharged until the earliest time when it is reasonably and in good faith determined by those charged with the seaman's care and treatment that the maximum care reasonably possible has been effected."

The unanimous *Vella* Court stressed portions of the adopted phraseology. This Court will apply this standard in determining the facts.

## FINDINGS OF FACT

The testimony adduced applying even this liberal standard demonstrates that Howard is not entitled to further maintenance and cure. Dr. Scott Piper and Dr. Donald Dooley are both of the belief that Howard sustained soft tissue injuries as a result of the shipboard incidents. Both physicians monitored and treated Howard's condition from shortly after the shipboard incidents through the present time. The doctors' testimony is unequivocal that (a) Howard displays no objective signs of injury; (b) Howard has reached a point of maximum cure; and (c) that no further medical treatment is required to improve Howard's condition. Indeed, Piper referred to the present medical treatment as "odious".

---

1. These figures are in addition to the settlement already paid to Howard.

244

This Court, sitting as the trier of fact, concludes that there is no competent medical evidence to support any further orthopedic or neurological treatment. This leaves the issue of psychiatric treatment.

Howard was examined and evaluated on several occasions by Dr. Paul Jarrett. Dr. Jarrett concludes that Howard does not suffer from any psychiatric impairment; does not require psychotherapy; and future psychotherapy will not operate to eliminate Howard's complaints or improve his condition.

The findings of the U.S. Public Health Service Hospital in Baltimore, Maryland corroborate the opinions of Drs. Dooley, Piper and Jarrett. The U.S. Public Health Service records reflect that all objective studies performed on Howard (of which there were many), demonstrated no specific abnormality. Howard was discharged in October of 1981, with a notation that he had benefited maximally from this stay.

Notwithstanding these findings, Howard continues to receive medical care and therapy for the same subjective complaints. He has received this treatment in excess of five years. Notwithstanding the duration of treatment, Howard's complaints persist. Under these circumstances, this Court concludes that Belcher Towing Company is under no further obligation to provide maintenance and cure to Howard.

Further, Defendant's characterization of Dooley, Piper and Jarrett, as "hired guns" is blatantly incorrect. As demonstrated, Piper rendered treatment to Howard shortly after the shipyard incidents which precipitated this lawsuit. Howard was referred to Dooley by Dr. Meyerson—one of the physicians now relied upon by the Defendant. Jarrett has examined, treated, and evaluated Howard on at least five occasions.

Lastly, this Court rejects the testimony of Dr. Charles Mutter. While this Court has high regard for Dr. Mutter, it feels that Dr. Mutter is just flat wrong in this case. Comcomitantly, the Court accepts the testimony of Dr. Paul Jarrett. In summary, the Court sees no basis, legally or factually, for any further treatment including hypnotic sessions.

## CONCLUSIONS OF LAW

 1. There is no prediction even within the standard of reasonable medical possibility that further treatment will cure Howard or will effect a permanent improvement of his alleged chronic and static condition. Further treatment is not necessary, nor will it improve Howard's condition.

2. Under these circumstances, there should be no further liability on the part of Belcher Towing Company for maintenance and cure payments to William Richard Howard.

3. Accordingly, the Court enters a declaratory decree on behalf of Plaintiff, Belcher Towing Company, and against Defendant, William Richard Howard, and retains jurisdiction to to tax costs.