**Joseph DiBENEDETTO and
Heather DiBenedetto**

v.

**Thomas WILLIAMS and Catherine
Williams, d/b/a F/V ROANN.**

**Civ. A. No. 93–0429ML.**

United States District Court,
District of Rhode Island.

Jan. 20, 1995.

Keith B. Kyle, Carroll, Kelly & Murphy, Providence, RI, and Thomas E. Stiles, Stiles & Wright, P.C., New York City, for defendants.

## ORDER

LISI, District Judge.

The Findings and Recommendation of United States Magistrate Judge Robert W. Lovegreen filed on December 7, 1994 in the above-captioned matter is accepted pursuant to Title 28 United States Code § 636(b)(1).

## REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

In this matter, plaintiff, Joseph DiBenedetto ("DiBenedetto"), has filed a motion to require defendants, Thomas and Catherine Williams ("Williams"), to pay maintenance and cure to him retroactive to the date of injury less any payments made by defendants. This matter was referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and F.R.Civ.P. 72. Based on the following analysis, I recommend plaintiff's motion for maintenance and cure be granted.

### Background

Plaintiffs filed this complaint in admiralty in this Court on August 12, 1993, alleging that DiBenedetto was a seaman in the employ of the defendants on the F/V ROANN prior to and including September 23, 1992. DiBenedetto alleges that on August 15, 1990, while aboard the F/V ROANN as a seaman, in the course of his duties, he was injured "while filling and lifting bait barrels which were defective in that they had lost their handles and not been repaired by the defendants, thereby injuring his right wrist." (Compl. ¶ 4.) DiBenedetto also alleges that on September 23, 1992, while aboard the F/V ROANN as a seaman, in the course of his duties, he was injured "when a rotted bull rope snapped and parted, thereby injuring his left wrist and arm." (Compl. ¶ 5.)

Thomas H. Quinn, Jr., Quinn, Shechtman & Teverow, Providence, RI, for plaintiffs.

The complaint contains five counts. Counts I and II allege negligence and unseaworthiness as to the 1990 incident; Counts III and IV allege negligence and unseaworthiness as to the 1992 incident; and Count V seeks maintenance and cure from the defendants for the period of DiBenedetto's disability which he alleges is from September 23, 1992 and continuing.

On June 24, 1994, DiBenedetto filed his motion for maintenance and cure. A hearing was scheduled and held on August 24, 1994. Thereafter, the parties sought additional time to and including November 4, 1994 to determine if further testimony would be offered and to file proposed findings of fact and conclusions of law. I have now received these documents and the matter is now ready for a Report and Recommendation.

Plaintiff alleges that he has remained disabled since September 23, 1992. From that date to a period of time in July, 1993, defendants paid DiBenedetto maintenance and cure as a result of his 1992 injury to his left hand, wrist and arm. Thereafter, defendants contend that DiBenedetto was no longer disabled or that any disability was not causally related to the September 23, 1992 incident aboard the F/V ROANN.

Plaintiff testified that on September 23, 1992, he was employed by defendants as a deckhand on the F/V ROANN. He had held this position approximately three years. On September 23, 1992, the F/V ROANN was fishing in Block Island Sound. The fishing net had previously been set and was in the process of being retrieved when one of the ropes on the net broke. Plaintiff was on the starboard side of the boat just aft of the mid section. While attempting to get the fishing gear on board, plaintiff's left hand and arm became wedged between the side of the boat at the railing and the fishing net. The boat was rolling and the net was in motion. His hand was immediately painful, and he informed defendant, Thomas Williams, who was the owner and captain of the boat. Plaintiff continued to help retrieve the net and then sort out the catch. The boat returned to port that day and plaintiff sought medical attention at South County Hospital. His left hand was x-rayed and bandaged, and

he was referred to an orthopedic surgeon, Dr. Jaime Chamorro. Plaintiff denied any problem with his left hand or wrist or any loss of employment therefrom for at least two years prior to this incident. Plaintiff was examined by Dr. Chamorro the next day and has not returned to work since.

On October 7, 1992, plaintiff admitted he was involved in a domestic dispute and the Narragansett police were called to the DiBenedetto home. Plaintiff had assaulted his wife with the back of his right hand. The police responded and eventually plaintiff was sprayed with pepper gas and pushed backwards onto the bed. One police officer placed a handcuff on plaintiff's left hand and eventually both hands were handcuffed behind his back. Plaintiff was placed in a police cruiser where he was again sprayed. He kicked out a rear side window of the cruiser with his left foot. As a result of his actions that day, plaintiff was arrested. However, he never sought any medical attention as a result of this incident, especially for his left hand, except for treatment to his eyes as a result of the spray. The next medical treatment he received was on his scheduled visit with Dr. Chamorro on October 13, 1992; at which time, the complaints concerning his left hand remained the same. Plaintiff testified that the only reason he has not gone back to work is the injury to his left hand.

As stated, upon returning home following this incident, DiBenedetto commenced treating with Dr. Jaime Chamorro, an orthopedic surgeon with an office in Wakefield, Rhode Island. Dr. Chamorro testified that DiBenedetto had treated with Dr. Chamorro on prior occasions, but not for a left wrist or hand injury. Dr. Chamorro first examined plaintiff on September 24, 1992 when he complained of a left hand injury, specifically, his left wrist, hand and fingers. Dr. Chamorro took a history from plaintiff that his left hand and forearm were caught between the rail of the boat and heavy fishing gear coming on board. The exam showed swelling in his wrist and tip of the fingers, but more pronounced in the metacarpal region and metacarpal phalangeal ("MP") joints of the fingers, especially the middle and ring fingers. Restriction of motion was present in the MP

joints of the fingers. A neurological exam was performed to detect the sensation and motor function of the median, ulnar and radial nerves. This showed decreased sensation without any motor function deficit. X-rays revealed no fracture, dislocation or other bony abnormality. Dr. Chamorro made a clinical impression of acute sprain, left hand and believed DiBenedetto would be out of work a minimum of two weeks. Dr. Chamorro also opined that plaintiff's injury to his left wrist, hand and fingers was directly related to the September 23, 1992 incident on board the F/V ROANN.

Plaintiff was examined again by Dr. Chamorro on September 29, 1992 when he was noted to have decreased pain and swelling but complete restriction in range of motion ("ROM") of the wrist and small joints of the thumb and fingers. Plaintiff was doing well but remained unable to work.

On October 6, 1992, plaintiff was seen again by Dr. Chamorro with a complaint of continued pain in his left forearm, wrist and hand as well as the MP joint of the thumb. However, ROM was no longer restricted. Plaintiff was doing well.

On October 13, 1992, Dr. Chamorro's examination showed the same clinical findings without any significant improvement. Plaintiff remained disabled.

On October 20, 1992, Dr. Chamorro noted increased swelling and pain. A further x-ray examination was performed which suggested a fracture at the base of the thumb. There was no improvement and plaintiff remained disabled.

On October 29, 1992, pain persisted but ROM was improved. Overall there was mild improvement in plaintiff's condition.

Plaintiff was seen by Dr. Chamorro on six occasions in November and December, 1992 with continued pain but no swelling. He continued to do well, and he was prescribed exercises to strengthen his hand and forearm. He remained disabled.

During the first quarter of 1993, Dr. Chamorro examined plaintiff on nine occasions.

There did not appear to be any noticeable improvement in plaintiff's left hand, wrist and forearm either subjectively or objectively. Dr. Chamorro did advise plaintiff to seek a second opinion from Dr. Gregory Austin, an orthopedic surgeon with a specialty in hand surgery.

During the second quarter of 1993, Dr. Chamorro examined plaintiff on seven occasions. There was no significant improvement. By May 5, 1993, Dr. Chamorro was of the opinion that he had treated plaintiff to the maximum of his ability and that plaintiff may not improve further or be able to return to his former employment as a seaman. However, Dr. Chamorro did send plaintiff for further testing, an EMG (a nerve conduction study), to determine if surgical intervention might be appropriate. The EMG of the left arm was performed by Dr. William Golini, a neurologist, on May 14, 1993. The EMG demonstrated a left-sided carpal tunnel syndrome which was moderate in severity and a mild ulnar compressive neuropathy in the region of the ulnar groove. Plaintiff was also referred to a medical facility for a work hardening program, functional capacity evaluation, vocational rehabilitation and a psychological evaluation. Unfortunately, that facility declined to accept plaintiff as a patient as he was not within the Rhode Island workers' compensation program.

Dr. Chamorro continued to examine plaintiff in July and August, 1993 and noted little if any improvement.

Plaintiff was next seen on January 21, 1994 with a complaint of pain in the left hand and thumb and a sensation of numbness. An examination by Dr. Chamorro revealed no swelling but pain with palpation. There was decreased sensation in the ulnar nerve but no loss of function.

Dr. Chamorro made an assessment that plaintiff appears to have synovitis[1] at the carpometacarpal ("CMC") joint of the thumb and some residual tendonitis[2] into the dorsal and extensor tendons of the left wrist and forearm. Most importantly, Dr. Chamorro opined that plaintiff had not improved with

1. Synovitis is inflammation of the lining of the joint.

2. Tendonitis is inflammation of tendons.

treatment and that his present condition may not change. Additionally, Dr. Chamorro found evidence of carpal tunnel syndrome which findings were causally related to the September 23, 1992 incident aboard the F/V ROANN.

Plaintiff was seen again by Dr. Chamorro in April and May of 1994. The findings were the same on both occasions: no swelling, no restriction of ROM, reactional pain and normal neurovascular findings. Plaintiff remained disabled as a seaman and was so disabled since the date of the incident. During the course of his treatment, Dr. Chamorro felt that plaintiff had reached the maximum medical cure that he could provide, but that other physicians, notably Dr. Austin, could offer further and additional medical care.

On cross-examination Dr. Chamorro was asked whether the questionable fracture seen on the October 20, 1992 x-ray was due to the incident aboard the F/V ROANN or the incident involving the domestic dispute occurring on October 7, 1992 when plaintiff was handcuffed by the police. Dr. Chamorro stated his opinion that any fracture would have occurred prior to October 7, 1992 based upon the advanced stages of healing present on the x-ray of October 20, 1992.

Also, Dr. Chamorro stated in correspondence dated July 19, 1993 that plaintiff had not improved to the point he could work as a seaman, but that there had been some improvement in levels of pain, mobility and strength to maximum limits. Dr. Chamorro recommended vocational rehabilitation and, although he had previously recommended a surgical procedure on the left wrist known as carpal tunnel release, he no longer felt this would provide any significant improvement *at this time.* Dr. Chamorro felt plaintiff had reached maximum medical improvement under Dr. Chamorro's care and no further modality of treatment was recommended except to be treated symptomatically as needed. (Def.'s Ex. A.)

As of the date of the hearing on the present motion, August 24, 1994, Dr. Chamorro stated that he could offer no opinion as to whether any surgical intervention in plaintiff's left hand or wrist would result in improvement therein.

Dr. Gregory Austin testified by deposition on August 23, 1994. As stated, he is an orthopedic surgeon with a specialty in hand surgery. He first saw plaintiff on March 30, 1993, following a referral by Dr. Chamorro. The examination disclosed good alignment of the left wrist with no marked swelling, but decreased sensation in the median nerve. There was a positive Tinel's[3] at the carpal tunnel and a positive phalanx test[4] at 15 seconds. There was marked tenderness at the CMC joint, a positive grind test and minimal subluxation (partial dislocation). There was evidence of CMC arthritis of the thumb. Dr. Austin's diagnosis was post traumatic exacerbation of the left carpometacarpal arthritis at the base of the thumb and post traumatic carpal tunnel syndrome of the left hand. Dr. Austin recommended cortisone injections to determine if there was a significant amount of inflammation in the CMC joint.

Dr. Austin next saw plaintiff on May 23, 1994, also on referral from Dr. Chamorro. Plaintiff had tenderness at the CMC joint, mild subluxation of the joint, a positive Tinel's and a positive phalanx test at 30 seconds. X-rays were taken and showed mild CMC arthritic changes with narrowing of the joint space. Dr. Austin's diagnosis was left CMC synovitis, mild arthritis of the left thumb and bilateral carpal tunnel syndrome, which was mild in the right hand and more substantial in the left hand.

The bilateral carpal tunnel syndrome was less prominent however, than in March, 1993, when the first exam occurred. Dr. Austin recommended no surgery for the right hand, but, for the left hand, he recommended two surgeries, a CMC interposition arthroplasty which is surgery to change the CMC joint of the thumb and a carpal tunnel release. Dr.

---

3. Tinel's is a provocative test where the physician taps on the nerve and there is a tingling response in the distribution of the median nerve.

4. A phalanx test is another provocative test for carpal tunnel syndrome and involves bending the wrist in deflexion or extension to determine if there is tingling in the median nerve distribution.

Austin stated that, in his opinion, plaintiff had not reached maximum medical cure, as the surgeries suggested would improve plaintiff's left hand. Also, Dr. Austin opined that the then problems with plaintiff's left hand and wrist were causally related to the incident aboard the F/V ROANN. Even though plaintiff had evidence of some arthritis and carpal tunnel syndrome bilaterally prior to September 23, 1992, Dr. Austin still felt the primary cause of plaintiff's injury was the incident aboard the F/V ROANN, because there were no prior similar problems with plaintiff's left hand and the pain in the CMC joint occurred right after the September 23, 1992 incident. While Dr. Austin could not rule out the October 7, 1992 domestic dispute and handcuffing of plaintiff as a causative factor for the left hand injury, he relied on plaintiff's history and Dr. Chamorro's office notes of October 6 and 13, 1992, which showed no significant change in plaintiff's condition, for his opinion that the incident aboard the F/V ROANN was the cause of the injury to plaintiff's left hand. Dr. Austin opined that both injuries, the CMC joint and the carpal tunnel syndrome, prevent plaintiff from returning to his employment as a seaman, although he could perform some limited activities.

Dr. Lee Edstrom, a plastic surgeon, was requested by defendants to examine plaintiff's left hand and review certain medical records pertaining to plaintiff. The examination occurred on May 16, 1994 at Dr. Edstrom's office. Plaintiff continued to complain of pain in the left hand, at the base of the thumb and the radial side of the wrist. He also complained about median nerve irritation and compression. The exam disclosed a very tender base of the left thumb but no Tinel's sign in the wrist. Dr. Edstrom found that plaintiff did have degenerative joint disease of the thumb and a history of carpal tunnel syndrome even though it was not a major problem at the time. Dr. Edstrom stated he would not have recommended carpal tunnel release surgery as of the time of his examination, because the problem was not then acute. The degenerative disease at the base of the thumb was ongoing for many years according to Dr. Edstrom. While the incident aboard the F/V ROANN did not cause the CMC joint problem according to Dr. Edstrom, it certainly could have had an exacerbating effect on this problem.

Dr. Edstrom opined that plaintiff would benefit from surgery on the CMC joint as of the time of his examination. Dr. Edstrom possessed no information concerning any incident that would have exacerbated the CMC joint degeneration disease prior to the incident aboard the F/V ROANN. Dr. Edstrom also stated that while the Tinel's was negative, this did not mean that carpal tunnel syndrome was not present or that plaintiff could return to his duties as a seaman. This simply meant that as of the examination, the carpal tunnel syndrome problem was not acute. Dr. Edstrom did state however, that if plaintiff underwent CMC joint surgery, he would also recommend plaintiff have carpal tunnel release surgery at the same time, since the two surgeries would be in the same area.

Defendants also offered into testimony the deposition of Officer Michael Casey ("Casey"), a member of the Narragansett Police Department. On September 23, 1992, Casey and Officer Reynolds ("Reynolds") were dispatched to plaintiff's home for a "possible domestic." Casey and Reynolds entered plaintiff's home with the intent to arrest him. When plaintiff verbally resisted and assumed a fighting stance, he was sprayed with pepper gas. When the officers attempted to handcuff plaintiff, a fight ensued. Casey grabbed plaintiff's right arm and Reynolds the left. Plaintiff resisted and was pushed onto the bed. Casey then held plaintiff's left arm and Reynolds attempted to control the right arm without success. Eventually, Casey was able to place a handcuff on plaintiff's left wrist. Reynolds then brought the right arm behind plaintiff's back and both wrists were cuffed. Plaintiff was placed in a cruiser where he kicked out the rear side window. He was brought to the police station and placed in a cell. No medical attention was provided to plaintiff nor did he request any. Casey did not observe plaintiff throw any punches and denied that plaintiff ever hit him with a fist. Casey did state that after cuffing plaintiff's left hand, he "tugged" on the handcuff to get plaintiff's left arm behind

his back. However, plaintiff never offered any complaints regarding his left hand.

### Discussion

As stated previously, the issue to be decided is whether DiBenedetto is entitled to maintenance and cure from September 23, 1992 to the present and continuing. Defendants contend that plaintiff is not entitled to maintenance and cure beyond July, 1993, because: (1) plaintiff's injuries were not caused by the incident aboard the F/V ROANN and (2) if causally related, such injuries reached maximum medical cure as of July, 1993.

■ We start with the basics. "Maintenance is a subsistence allowance designed to provide the seaman with compensation sufficient to pay for his food and lodging until the time of his maximum cure; maintenance payments are not to compensate the seaman for any specific injury or damage. Maintenance is intended to cover the reasonable costs of food and lodging comparable to that received aboard the vessel." Thomas J. Schoenbaum, *Admiralty and Maritime Law*, Vol. 1, § 6–32 at 358 (2nd Ed.1994). Cure is "care, including nursing and medical attention during such period as the duty continues." *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938).

■ The shipowner is liable for maintenance and cure if the injury occurs while the seaman is in the service of the ship. *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 726, 63 S.Ct. 930, 931, 87 L.Ed. 1107 (1943). This liability has been recognized in the United States as an implied provision in contracts of marine employment. *Id.* at 730, 63 S.Ct. at 934. Liability is not based on any fault or negligence of the shipowner, but the responsibility of curing the seaman is imposed on the shipowner as part of the employer-employee relationship. *Id.* The seaman's negligence or acts short of culpable misconduct will not relieve the shipowner of liability. *Id.* at 731, 63 S.Ct. at 934. Liability of the shipowner will be excused only by the "willful misbehavior or deliberate act of indiscretion" on the part of the seaman. *Id.* In short, maintenance and cure "covers all injuries and ailments incurred without misconduct on the seaman's part amounting to ground for for-

feiture" and applies while the seaman is on the ship or ashore. *Id.* at 732, 63 S.Ct. at 934. Liability on the shipowner continues until the illness has been cured or until the illness has been declared permanent. *Vella v. Ford Motor Co.*, 421 U.S. 1, 5, 95 S.Ct. 1381, 1384, 43 L.Ed.2d 682 (1974); *Farrell v. United States*, 336 U.S. 511, 517, 69 S.Ct. 707, 710, 93 L.Ed. 850 (1949). But, maintenance and cure is not the sole remedy of an injured seaman. In appropriate cases, he may recover damages for his injuries due to negligence or unseaworthiness. *Farrell v. United States*, 336 U.S. at 519, 69 S.Ct. at 711.

### A. Causal Connection

■ Defendants contend no maintenance and cure is due plaintiff, because his injuries were not caused by the incident aboard the F/V ROANN. Specifically, defendants contend that plaintiff's injuries were caused by a degenerative process which was in existence prior to the September 23, 1992 incident and/or that the injuries were caused by the scuffle and handcuffing of plaintiff by the police as a result of the marital dispute on October 7, 1992.

■ As to defendants' contention that plaintiff's injuries were caused by a preexisting degenerative process in the CMC joint of his left thumb, maintenance and cure may still be awarded plaintiff notwithstanding a pre-existing condition as long as that condition is not deliberately concealed and is not disabling at the time the seaman signs on for the voyage. If the underlying condition is aggravated or manifests itself while the seaman is in the ship's service, maintenance and cure is due the seaman. *Foster v. Brian's Trans. Service*, 1993 WL 114528 (E.D.La.1993) ("Where a seaman has a latent physical condition and is without reasonable ground to suspect its disabling effect during the voyage, he is entitled to maintenance and cure and wages; but where he knows that he is afflicted with a disabling disease and conceals the fact and holds himself out to be fit, then he is not entitled to maintenance and cure and wages."). *See also Stanislawski v. Upper River Services, Inc.*, 6 F.3d 537, 540

(8th Cir.1993); *Sammon v. Central Gulf Steamship Corp.*, 442 F.2d 1028, 1029 (2d Cir.1971); *Freeman v. Thunder Bay Transp. Co., Inc.*, 735 F.Supp. 680, 681 (M.D.La. 1990); *Bergeria v. Marine Carriers, Inc.*, 341 F.Supp. 1153, 1154 n. 3 (E.D.Pa.1972); *Smith v. Isthmian Lines, Inc.*, 205 F.Supp. 954, 955 (N.D.Calif.1962).

Plaintiff has two injuries: (1) carpal tunnel syndrome; and (2) left CMC synovitis and mild arthritis in the left thumb. There is no evidence that prior to the incident aboard the F/V ROANN, plaintiff experienced carpal tunnel syndrome in the left wrist *of a disabling nature*. Indeed, testimony from plaintiff reflects that he was not disabled from his duties as a seaman for the two year period prior to September 23, 1992, and no medical testimony or record has contradicted plaintiff. The same is true of the second injury, aggravation of a pre-existing degenerative condition in the CMC joint in the left thumb. While the medical testimony supports the defendants' contention that this injury was a pre-existing condition, there is no evidence of disability therefrom for the two year period prior to September 23, 1992.

Plaintiff has testified, and there is no contrary testimony presented by defendants, that he suffered a crushing injury to his left hand and arm when it was caught between the starboard side of the boat and the net filled with fish and other material. Prior to this incident, plaintiff was capable of performing his full duties as a seaman. Subsequent to this injury, plaintiff suffered some swelling and pain of a substantial nature which have prevented him from performing his duties as a seaman up to the present time. Both Drs. Chamorro and Austin have testified that plaintiff remains disabled from his employment as a seaman.

Even Dr. Edstrom, defendants' medical expert, testified that the CMC joint degenerative disease, while not caused by the incident aboard the F/V ROANN, could have been aggravated or exacerbated by that incident. Such an incident would likely cause the degenerative disease to progress rapidly. The carpal tunnel syndrome injury was not prominent at the time of Dr. Edstrom's examination, but he testified it may return if plaintiff stressed his hand such as he would do if he returned to his employment as a seaman. Dr. Edstrom did not recommend and would not have recommended surgery for the carpal tunnel syndrome on the date of his examination, May 16, 1994, because such injury was not then prominent. Dr. Edstrom was not asked to and he did not address the issue of causation as to plaintiff's carpal tunnel syndrome.

However, both Drs. Chamorro and Austin have testified that their respective opinion is that both injuries were caused by the incident aboard the F/V ROANN based on the fact that there was no prior disability from either injury for at least two years before the incident and disability from these injuries occurred since the incident.

Defendants also argue that the October 7, 1992 incident involving the marital dispute was as likely a cause of plaintiff's injuries or an aggravation thereof as was the September 23, 1992 incident. Certainly all medical experts agreed that the October 7, 1992 incident *could* have caused the plaintiff's pain and extended disability. If this was all the record revealed on this issue, plaintiff may well have a difficult task in meeting his burden of proof on the issue of causation.

However, we have medical records and testimony from Dr. Chamorro who examined plaintiff on October 6 and 13, 1992, just before and shortly after the October 7, 1992 incident. On October 6, 1992, Dr. Chamorro prepared an extensive note concerning that examination with particular detail of all objective signs in the left thumb, hand, wrist and fingers. On October 13, 1992, the next scheduled examination, Dr. Chamorro stated that the "examination showed essentially the same clinical findings as was in the last visit." At this time, Dr. Chamorro was unaware of the October 7, 1992 incident and certainly was not concerned with any causation problem. Since there was no change in plaintiff's condition immediately before and after the October 7, 1992 incident, it is fair to conclude, as I do, that the October 7, 1992 incident did not increase or affect in any manner plaintiff's injuries. Supporting this conclusion is the testimony of plaintiff that he sought no additional medical treatment

for his left hand as a result of the October 7, 1992 incident and the testimony of Officer Casey that he observed no punches thrown by plaintiff, that plaintiff was not provided nor did he request any medical attention for his left hand following his arrest, and that plaintiff did not identify any problem with his left hand that evening. Lastly, Dr. Chamorro testified that the October 20, 1992 x-ray showing a questionable fracture also showed advanced healing so that any fracture would of necessity have had to occur before October 7, 1992.

I am satisfied that this record supports a finding that the incident aboard the F/V ROANN caused plaintiff's injuries or aggravated pre-existing conditions so as to render plaintiff disabled from his duties as a seaman.

### B.  *Maximum Medical Cure*

██  Defendants state that in any event no maintenance and cure is due plaintiff after July, 1993, because plaintiff reached maximum medical cure at that time. Plaintiff disputes this and argues that all doctors, Chamorro, Austin and Edstrom, agree that surgery is required on the CMC joint of the left thumb and also for the carpal tunnel syndrome. Certainly, Dr. Edstrom agrees that as long as surgery on the CMC joint is performed, the carpal tunnel release should be performed as part thereof.

It is true that Dr. Chamorro, on July 19, 1993, wrote to a representative of defendants' insurance carrier that plaintiff's level of pain, his mobility and his strength in the left hand, wrist and fingers had improved to maximum limits and that plaintiff required vocational rehabilitation to adapt to his then condition. Dr. Chamorro opined that plaintiff "has reached maximum medical improvement and I don't recommend any further modality of treatment except to be treated symptomatically as needed." (Def.'s Ex. A.)

Without more, this exhibit may have resolved this issue. However, Dr. Chamorro testified at the hearing concerning his opinion in the July 19, 1993 letter. Dr. Chamorro clearly testified that in July, 1993, he was of the opinion that plaintiff had reached maximum medical improvement *based upon the*

*medical treatment that Dr. Chamorro could then offer.* However, he was not stating that other doctors, notably Dr. Austin, could not offer additional medical treatment which would improve plaintiff's condition.

Dr. Austin testified by deposition and stated by letter of May 5, 1993 to the representative of defendants' insurance carrier that plaintiff would benefit from the surgery and that he is "not at a maximum point of recovery at this point and that would depend upon the outcome of surgery." (Pl.'s Ex. 2, Austin depos., Ex. A, letter of May 5, 1993.) By letter of May 23, 1994 to plaintiff's counsel, Dr. Austin stated that plaintiff is an appropriate candidate for the two surgeries and "this certainly does not guarantee getting him back to being fully unrestricted in terms of his activities as a commercial fisherman, but I think should certainly improve his situation with regard to activities of daily living which he is having problems doing at this time and should be able to help relieve his pain situation." (Pl.'s Ex. 2, Austin depos., Ex. A, letter of May 23, 1994, pp. 2–3.)

Dr. Edstrom testified that he shared Dr. Austin's opinion that plaintiff would benefit by surgery to the CMC joint of the left thumb. Dr. Edstrom also opined that if the CMC surgery was performed, the surgeon should also perform a carpal tunnel release during that surgery.

This record is replete with competent, credible medical testimony that plaintiff has not reached a maximum medical cure as of this time and that surgery should be performed to reach that level.

I am satisfied that this record supports a finding that plaintiff has not yet reached maximum medical improvement and will not do so until the two surgeries are performed.

### *Findings*

Based upon the foregoing analysis, I make the following findings:

1.  That on September 23, 1992, plaintiff was engaged as a seaman on the F/V ROANN, which was owned jointly by defendants Thomas and Catherine Williams;

2. That on September 23, 1992, while in the service of the F/V ROANN, plaintiff was attempting to bring on board a fishing net full of fish and other materials and that in the natural and usual course of bringing this fishing net on board, his left hand was pinned between the fully laden fishing net and the fishing vessel;

3. That the plaintiff's conduct did not result from any of his own vices or gross acts of indiscretion;

4. That the injuries that plaintiff is suffering from: (1) an aggravation of a pre-existing degenerative condition at the base of his left thumb in the carpometacarpal joint, and (2) traumatic carpal tunnel syndrome, are both causally related to the fishing incident of September 23, 1992;

5. That plaintiff has been paid maintenance and cure from September 23, 1992 up to July, 1993, including any wages to which he was entitled at the end of his voyage when he was injured;

6. That these defendants are obligated to pay for all reasonable medical expenses of Dr. Chamorro and Dr. Austin from September 23, 1992 to the present time and continuing until a cure or maximum medical improvement has been reached;

7. That the plaintiff has been disabled from his work as a fisherman from September 23, 1992, to present;

8. That the plaintiff has not yet been cured or reached maximum medical improvement;

9. That it is reasonably necessary, in order for the plaintiff to reach maximum medical improvement, for Dr. Austin to perform the requested operation on plaintiff's left CMC joint;

10. That it is further reasonably necessary, for the plaintiff to return to employment and reach maximum medical improvement, that he have a carpal tunnel release at the same time that the CMC joint surgery is being performed;

11. That the defendants are liable for the reasonable and necessary medical and hospital costs for the requested surgery by Dr. Austin;

12. That the defendants are liable for maintenance at the generally accepted rate of $10.00 per day from July, 1993, and continuing until the plaintiff achieves maximum medical improvement.

### Conclusion

For the reasons stated, I recommend plaintiff's motion for maintenance and cure be granted.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[5] Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court.[6]

December 7, 1994

---

**5.** Rule 32, Local Rules of Court; F.R.Civ.P. 72(b).

**6.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).