SHEPHERD, J.,
dissenting.
This is an appeal of an order requiring Royal Caribbean Cruises, Ltd. to pay a seaman indefinite maintenance benefits of twenty-five dollars per day and the cost of rehabilitation, based upon a request made, without supporting evidence, during a motion calendar. The majority opines that because it failed to appeal a prior interlocutory injunction, also obtained without supporting evidence, requiring it to provide the seaman with temporary housing in Miami, Royal Caribbean is barred from challenging the current order. Because the Florida Rules of Appellate Procedure authorize but do not compel a party to appeal from an interlocutory injunction, and the award of maintenance and cure was unsupported by evidence, I respectfully dissent.
FACTUAL BACKGROUND
The seaman in this case, Jean Rigby, signed aboard Royal Caribbean’s Majesty of the Seas on July 7, 2006. On approximately November 22, 2006, Rigby developed right groin pain that was burning in nature, which he attributed to lifting weighty shipboard containers during the course of duty.[5] He initially saw a ship *1149 board doctor, who told him he had a hernia. Consistent with its obligation under general maritime law, see supra note 1, Royal Caribbean arranged for Rigby to be evaluated by a shoreside specialist, who diagnosed him with a right inguinal hernia and recommended surgery to repair it. Rigby elected to undergo the surgery and recovery in his home country, Nicaragua. Royal Caribbean then arranged for Rigby to disembark and return home for further care. In Nicaragua, Royal Caribbean provided Rigby with maintenance, and arranged and paid for Rigby to undergo a right-inguinal herniorrhaphy. The surgery was performed on December 15, 2006, approximately one week after his disembarkation from the ship. His treating physicians in Nicaragua opined that he reached maximum medical improvement for his hernia injury on March 2, 2007.
On February 28, 2007, during his final evaluation for the inguinal injury, Rigby complained of pain in his left knee. Royal Caribbean continued paying maintenance, and arranged and paid for an evaluation and treatment with Dr. Luis Gutierrez Quant, an orthopedic physician. Dr. Gutierrez Quant diagnosed Rigby with a fracture of the left patella. Royal Caribbean paid for Rigby to undergo surgery to the left knee, as well as postoperative physical therapy. Royal Caribbean paid maintenance during this period as well.
During the course of the therapy on the left knee, Rigby began complaining of right-shoulder pain. In response, Royal Caribbean arranged for a further evaluation by Dr. Gutierrez Quant. Diagnostic tests prescribed by Dr. Gutierrez Quant, including X-rays and an ultrasound of the shoulder, were normal. On September 3, 2007, Dr. Gutierrez Quant found Rigby was fit for duty and had reached maximum medical improvement with respect to his shoulder; Thereafter, Dr. Gutierrez Quant opined that Rigby reached maximum medical improvement for his left knee on January 22, 2008. In total, Royal Caribbean continuously paid maintenance and cure for Rigby from late November 2006 to January 22, 2008.
On December 12, 2008,[6] plaintiffs counsel brought Rigby to Miami for examination of the same three complaints for which he was treated in Nicaragua. Rig-by’s Miami physician, Dr. Richard Roz-encwaig, determined Rigby needed further treatment for his shoulder and knee and, after several months of therapy in Miami for both conditions, Dr. Rozencwaig performed arthroscopic surgery on Rigby’s right shoulder on April 16, 2009.
On July 2, 2009, after Royal Caribbean rejected plaintiffs demands for reinstatement of maintenance and cure, Rigby filed a four-count complaint against Royal Caribbean for: (1) maintenance and cure; (2) Jones Act negligence; (3) Jones Act negligent failure to treat; and (4) unseaworthiness. In an attached Emergency Motion for Maintenance and Cure, Rigby asserted that after six months living in the United States courtesy of the “generosity of oth *1150 ers,” he was being thrown out of his Miami hotel and was about to become homeless. Four days after Rigby filed his complaint, the trial judge held a telephonic hearing from her car on the emergency motion and, without taking any evidence, ordered Royal Caribbean to “house [Rigby] at the Best Western ChateauBleau Hotel in Coral Gables for ten days,” and, in the meanwhile, “investigate plaintiffs medical complaints and send him for an independent medical examination.” The order encapsulating the results of the July 6, 2009,[7] hearing further stated: “The continuation of the plaintiffs maintenance, and the additional relief sought by plaintiffs motion, is deferred at this time until further hearing by the Court, after the evaluation of the plaintiff.”
The next hearing on the matter occurred at a motion calendar on July 23, 2009, during which the trial court was presented with the report of an independent medical examination conducted by Dr. Jerry Sher on July 13, 2009. Dr. Sher concluded Rig-by “has likely reached maximum medical improvement with regard to his orthopedic complaints [and] additional surgery to the right knee[8] is unlikely to yield any significant gains given the diffuse nature of his symptoms.” Despite Dr. Sher’s opinion concerning future surgery, Plaintiffs counsel announced at the hearing that Rigby was scheduled for additional left-knee surgery in two weeks. The trial court was perturbed that the “further hearing” ordered on July 6 had been placed on her ten-minute motion calendar. Nevertheless, because the surgery was scheduled within two weeks, the trial court ordered Royal Caribbean to keep Rigby in the hotel until his surgery and once again deferred the issue of maintenance. In turn, Plaintiffs counsel promised to get an evi-dentiary hearing date to resolve the matter.[9]
*1151 Surgery on Rigby’s knee did not occur until August 27, 2009. When considerably more than two weeks passed without an evidentiary hearing (during which Royal Caribbean continued to pay Rigby’s hotel expenses), Royal Caribbean moved to sever and expedite the maintenance and cure claim for trial. At the October 1, 2009, hearing on this motion, with Plaintiffs counsel now objecting to both a severance and an evidentiary hearing because counsel had caused the entire case to be set on the court’s February 1 trial calendar, Royal Caribbean’s motion was denied. The trial court stated: “I am not dealing with anything else in this case until trial unless you need me for something. You pay or not pay at your own peril.”
On December 21, 2009, Royal Caribbean learned from Plaintiffs counsel Rigby had returned to Nicaragua and would not be available either for his scheduled pre-trial deposition or the February trial. Recognizing that for some unknown period it had been paying for an unoccupied hotel room,[10] Royal Caribbean filed a motion to terminate its obligation to house the plaintiff in the United States. At the January 20, 2010, hearing on the motion, the trial court terminated Royal Caribbean’s obligation to pay Rigby’s Coral Gables hotel room, but, without any evidence, ordered Royal Caribbean to pay Rigby maintenance at a rate of twenty-five dollars (US) per day and furnish plaintiff post-surgical rehabilitation. The primarily hand-written order reads in pertinent part:
ORDERED AND ADJUDGED that said Motion be, and the same is hereby [gjranted in part. [Defendant] shall no longer be required to pay for Plaintiffs housing in Miami. [Defendant] shall pay Plaintiffs maintenance at a rate of $25 (US)/day and furnish Plaintiff post-surgical rehabilitation as necessary. Plaintiff shall provide [Defendant] with all recent medical and physical therapy records to the extent they exist.
Thereafter, Royal Caribbean unsuccessfully moved for reconsideration, asking the trial court to reconsider its order or, in the alternative, reduce the maintenance rate to twelve dollars per day, based on a sworn affidavit stating that twelve dollars per day is what Royal Caribbean currently pays for maintenance for crewmembers in Nicaragua.[11]
DISCUSSION
The beginning of legal wisdom in this case is to recognize the July 6, 2009, order, which required Royal Caribbean to *1152 house Rigby for ten days while the defendant investigated Plaintiffs medical complaints, and is the order the majority says operates to bar appellate relief here as an interlocutory or temporary injunction. See Camji v. Helmsley, 602 So.2d 617, 618 (Fla. 3d DCA 1992) (“The very purpose of a temporary injunction is to preserve the status quo in order to prevent irreparable harm from occurring before a dispute is resolved.”); Black’s Law Dictionary 855 (9th ed. 2009) (defining a preliminary injunction as one “issued before or during trial to prevent an irreparable injury from occurring before the court has a chance to decide the case”). Like any interlocutory order, a temporary injunction is dissolva-ble or modifiable at any time during the course of the litigation. See, e.g., AC Holdings 2006, Inc. v. McCarty, 985 So.2d 1123, 1125 (Fla. 3d DCA 2008); Bettez v. City of Miami, 510 So.2d 1242, 1243 (Fla. 3d DCA 1987). For this reason, Florida Rule of Appellate Procedure 9.130(a)(3)(B) authorizes, but does not obligate, an adversely affected party to take an interlocutory appeal from orders which “grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions.” See Saul v. Basse, 399 So.2d 130, 133 (Fla. 2d DCA 1981) (“[Fjailure to utilize the right to take an interlocutory appeal does not restrict the scope of appellate review when the final order is appealed.”). Thus, the majority’s res judica-ta-like assertion that “[ijnasmuch as the trial court had already determined Rigby’s entitlement to renewed maintenance and cure benefits in an order that was not appealed by Royal Caribbean, [it must] by law affirm the trial court’s ruling,” see majority op. at 1146-47, is legally unsupportable.
Moreover, it is axiomatic that a court may “alter the decree to adapt it to such changed conditions or set it aside altogether ... where there is a change in the controlling facts on which an injunction rests.” See Jackson Grain Co. v. Lee, 150 Fla. 232, 7 So.2d 143, 146 (1942) (quoting 28 Am.Jur. pp. 494, 495). Here, there clearly was a change in the controlling facts because Rigby had returned to Nicaragua. Moreover, the second condition of the prior injunction had occurred. Royal Caribbean had investigated Rigby’s medical complaints, received a medical opinion that further surgery was unnecessary, and determined Rigby was not entitled to further maintenance and cure. Thus, upon Royal Caribbean’s motion, the trial court properly terminated the injunction to pay for the hotel room. Unfortunately, the trial court did not confine her ruling to ending Royal Caribbean’s obligation to pay for the hotel room, but ordered Royal Caribbean to pay Rigby’s maintenance and cure.[12] In so doing, the trial court erred.
Without evidence, the trial court could not convert the injunction for temporary relief to an order that not only set an indefinite maintenance amount, but also, for the first time, ordered Royal Caribbean to pay rehabilitation from a knee operation, the need for which was still in dispute.[13] Just months earlier, the trial court correctly declined to make Royal Caribbe *1153 an financially responsible for both maintenance. and cure without proof, and ordered the issue be set for an evidentiary hearing.[14] See Buchanan v. Sullivan, 620 So.2d 1301 (Fla. 4th DCA 1993) (reversing an injunction granted without evidence); Zuckerman v. Prof'l Writers of Fla., Inc., 398 So.2d 870 (Fla. 4th DCA 1981).
Here, Rigby’s entitlement to further maintenance and cure was in dispute, and should have been tried. The order awarding maintenance and cure without a trial flies in the face of settled law in this District that a seaman is not entitled to a pre-trial order for payment of maintenance and cure before a trial on the merits on disputed issues. See Rio Miami Corp. v. Balbuena, 756 So.2d 258 (Fla. 3d DCA 2000); Langmead v. Admiral Cruises, Inc., 610 So.2d 565 (Fla. 3d DCA 1992); see also Rose, 939 F.Supp. at 1548 (settling dispute between physicians as to whether seaman reached maximum medical improvement at bench trial on claim for maintenance and cure). The principle is one which generally is accepted. See Blake v. Cairns, No. C-03-4500 MJJ, 2004 WL 1857255, at *1 (N.D.Cal.2004) (“Generally, ‘[a] suit for maintenance and cure presents questions of fact. It should not be disposed of by summary judgment nor should payment be decreed on motion.’ ”) (emphasis added) (citing Martin J. Norris, The Law of Seaman, Vol. 2, § 26.21 (4th ed. 1985)); Carline v. Cap. Marine Supply, Inc., 81 F.R.D. 710 (E.D.La.1979) (denying seaman’s motion for preliminary injunction to compel employer to pay maintenance and cure); Billiot v. Toups Marine Transp., Inc., 465 F.Supp. 1265, 1269 (E.D.La.1979) (“[A]n injured seaman does not have the right to injunctive relief on the issue of payment of maintenance, and ... an employer has the right to dispute, in good faith, the rate of maintenance to be paid.”); Sanfilippo v. Rosa S., Inc., No. 85-3915-Me, 1985 WL 4565, at *2 (D.Mass.1985) (“[Ujnless the seaman can show that there are no material facts in dispute and that he is entitled to summary judgment on the claim, he cannot obtain a pre-trial order for payment.”); Claudio v. Sinclair Ref. Co., 126 F.Supp. 154, 154 (E.D.N.Y.1954) (“There is no authority for [an order for immediate payment of maintenance] by way of a summary proceeding or motion, excepting where there is no genuine issue of material fact....”); Guerra v. Arctic Storm, Inc., No. C04-1010L, 2004 WL 3007097 (W.D.Wash.2004) (holding that seaman was not entitled to summary judgment for payment of maintenance and cure where disputed issues of fact existed); but see Nuzum v. Dritsik Fisheries, Inc., No. A93-0057CV, 1995 WL 455801 (D.Alaska 1995) (granting pre-trial motion to reinstate maintenance and cure where there existed conflicting opinions concerning seaman’s fitness to return to work at the time maritime employer ceased maintenance and cure payments); Sefcik v. Ocean Pride Alaska, Inc., 844 F.Supp. 1372, 1373-74 (D.Alaska 1993) (granting motion to reinstate maintenance and cure where “questions of fact [concerning whether plaintiff had reached maximum medical improvement] did not arise after the time plaintiff filed his motion to reinstate maintenance and cure”).
Applying these principles of law to the facts of this case requires reversal of the order before us. Moreover, because the order under review rests on purely legal matters, it is subject to full, or de novo, review before this court. See Operation Rescue v. Women’s Health Ctr., Inc., 626 So.2d 664, 670 (Fla.1993) (“To the extent it *1154 rests on purely legal matters, an order imposing an injunction is subject to full, or de novo, review on appeal”), aff'd in part, rev’d in part on other grounds sub nom. Madsen v. Women’s Health Ctr., Inc., 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994).
CONCLUSION
I am sure the trial judge meant well. One also could not be faulted for detecting a tinge of sympathy for the seaman in the opinion of the majority. However, our legal system requires more than heartfelt sympathy. The solution to a seaman’s claim that he needs immediate payment of maintenance and cure in this case lies in his own hands. He either may sue separately for maintenance and cure, or, having filed one suit, ask for severance of the maintenance claim and an expedited trial of it by the court. See Tate v. Am. Tugs. Inc., 634 F.2d 869, 871 (5th Cir.1981). The seaman in this case is not satisfied to pursue either of these well-travelled routes. I would reverse the order compensating him while he waits.

. The cause of the injury is of no moment to this case. Short of culpable negligence on the part of the seaman, a ship owner has an absolute duty under general maritime law to provide maintenance and cure while the seaman is in the employ of the ship "irrespective of whether the illness or injury is suffered in *1149 the course of the seaman's employment.” See Vella v. Ford Motor Co., 421 U.S. 1, 4, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975); see also Duarte v. Royal Caribbean Cruises, Ltd., 761 So.2d 367 (Fla. 3d DCA 2000) (holding ship owner responsible for paying maintenance and cure for aggravation and enhancement of shipboard injuries caused by automobile accident while seaman was ashore receiving maintenance and cure).

. This was approximately eleven months after Dr. Gutierrez Quant found Rigby had reached maximum medical improvement with respect to his knee; fifteen months after Rigby was found fit for duty with respect to the shoulder; and twenty-one months after reaching maximum medical improvement from the hernia.

. The written order on this ruling was not entered until July 23, 2009.

. The reference to the "right knee” here appears to be a scrivener’s error. The report, which is four pages long, makes reference only to Rigby's left knee in multiple places, including the section recounting the details of the doctor’s physical examination.

. The order entered on July 23, 2009, simply memorialized the court’s July 6, 2009, ruling. Thus, the rulings made at the July 23, 2009, hearing were not reduced to writing, and as such were not appealable. See Rivera v. Dade Cnty., 485 So.2d 17, 17 (Fla. 3d DCA 1986) (stating "this court lacks jurisdiction to review orders which have not been reduced to writing”). The following occurred when the trial court was provided with Dr. Sher’s report:
THE COURT: ... So what do you want me to do with this report?
[PLAINTIFF’S COUNSEL]: I want you to hold an evidentiary hearing, as the law requires. I want the Court ... to continue the defendant's obligation, which is not predicated, Your Honor, on any fault or concepts of negligence or unseaworthiness, until this man reaches maximum medical improvement.
THE COURT: It says he did.
[PLAINTIFF'S COUNSEL]: That’s a doctor selected by the defendant after an 18-month delay of not sending him to anybody. He’s here in Miami. He’s treating with Doctor Rozencwaig, he's scheduled for knee surgery in two weeks, he has not reached MMI.
THE COURT: I'm not doing this on motion calendar. Keep paying the two weeks, let him have his surgery, and I’ll deal with it after that. We are not talking about a million dollars, anyway.
[DEFENDANT'S COUNSEL]: Judge, just to clarify, the defendant’s position is that he’s not entitled to surgery to be paid by us. THE COURT: I didn't say you are going to pay for the surgery. I just said keep him in the hotel. It can’t be that much for two weeks until his surgery. I’ll deal with it after.
THE COURT: [Defense counsel], you brought this man back to the United States *1151 without court order. Your office probably paid for his return. I went out of my way to make sure that I gave him the IME and the ten days of maintenance; okay? So that report, the way I'm reading it, is that the defense says he reaches MMI. At this point, I'm not going to order any more than the hotel payment. You need to continue to pay it and then I’ll deal with it at an eviden-tiary hearing at a later date, but not today.
THE COURT: The continuation of the plaintiff’s maintenance and additional relief is deferred until further hearing by the Court....
And I need to ask both of you not to do this, and particularly the plaintiff, on motion calendar, because I don't have the ability to deal with major serious issues on motion calendar.
[PLAINTIFF’S COUNSEL]: I'm sorry, Your Honor. We’ll get an evidentiary hearing date.

. The last evidence in the record of Rigby’s presence in the United States was November 13, 2009, his last appointment with Dr. Roz-encwaig. Rigby’s room charge at the Best Western ChateauBleau Hotel in Coral Gables was sixty-five dollars per day.

. I belabor the recitation of the factual and litigation history pertinent to this case only to show this is not an "unusual record,” and that a mere peek at the law is all that is necessary to appreciate why the order under review should be reversed.

. The obligation of a ship owner to pay maintenance and the obligation of a shipowner to pay cure represent two different obligations. "Maintenance is a per diem subsistence allowance ... intended to encompass the reasonable cost of food and lodging comparable to that received aboard the vessel.” Costa Crociere S.p.A. v. Rose, 939 F.Supp. 1538, 1548 (S.D.Fla.1996). Cure refers to medical treatment. Id.

. The majority fails to explain how a temporary order for short term maintenance bars review of a later order, the one now before us, which for the first time compels payment of cure.

. More accurately, the trial court should have asked the parties to either set the entire case for an expedited jury trial, or a bench trial on only the maintenance and cure claim.