Plumer v. Cunningham                    CV-99-022-JD  03/21/00
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Joseph W. Plumer

      v.                            Civil No. 99-022-JD
                                    Opinion No. 2000 DNH 071
Michael J. Cunningham, Warden,
New Hampshire State Prison


                            O R D E R


      Joseph W. Plumer, proceeding pro se, seeks habeas corpus

relief pursuant to 28 U.S.C.A. § 2254 from his incarceration on

sentences imposed after he violated the terms of his probation,

which was imposed after he pled guilty to charges of kidnaping,

burglary, and sexual assault.  The petitioner raises as grounds

for relief the ineffective assistance of his counsel with respect

to his guilty plea and the probation violation proceeding and

denial of due process in the plea and sentencing proceeding, the

terms of his probation, and the sentence imposed for violation of

probation.  The respondent moves for summary judgment on all of

the petitioner's claims.



                           Background

      A young child was kidnaped and sexually assaulted in August

of 1985 in Derry, New Hampshire.  The petitioner was investigated

in connection with the crime, but was not immediately charged,

and moved to Florida. After DNA tests were done in 1991, the petitioner was brought back to New Hampshire and was charged with kidnaping and burglary felonies and sexual assault misdemeanors. The state's prosecution of the petitioner on the charges twice resulted in mistrials due to deadlocked juries.

The third trial was scheduled for March of 1993. Shortly before trial, the state offered a plea agreement in which the petitioner would plead guilty and would receive suspended sentences, with time already served. The state then added probation with required conditions such as participation in a sexual offender program and alcohol restrictions. The petitioner told his counsel that he objected to the terms of the probation in the offer. On the Friday before the trial was scheduled to begin the next Monday, March 29, 1993, the petitioner agreed to accept the state's offer with two years of probation.

Over the weekend before the plea and sentencing proceeding was to be held, the petitioner decided he did not want to plead guilty and instead wanted to proceed to trial. When he arrived at the court on the morning of March 29, 1993, the petitioner told his counsel that he no longer wanted to plead guilty. They discussed the matter for several hours, including several heated exchanges.

Because the petitioner had decided that he objected to

2

probation, his counsel tried to negotiate probation terms that the petitioner would not find objectionable. After further discussions, the petitioner agreed to plead guilty and to accept a probation period of two years with certain conditions. On March 29, 1993, the petitioner pled guilty and received a suspended sentence with probation. The terms of his probation prevented him from contacting certain people and allowed him to have a thirty-day travel permit to seek employment and housing in another jurisdiction. The petitioner was released, on probation, on the date of his guilty plea.

Within a week of the guilty plea and sentencing, the petitioner objected to the terms of his probation, which included conditions that were not in the plea agreement. The petitioner contacted his counsel and instructed him to move to withdraw the guilty plea. As a preliminary step, the petitioner's counsel moved to clarify the sentence seeking to vacate the intensive probationary status that had been imposed on the petitioner, which was the reason for the extra probation conditions. The court granted the motion and ordered that the petitioner be placed on probation under ordinary terms. Counsel did not move to vacate the plea.

The petitioner continued to believe that the terms of his probation were excessive and more intensive than the terms to

3

which he had agreed in the plea agreement. In particular, he objected to his probation officer's insistence that he have a sex offender counseling evaluation. Despite his objections, the petitioner submitted to the evaluation after his counsel obtained payment for the evaluation from the state.

In late November of 1993, the petitioner went to Maine with a friend for the weekend. The car broke down during the trip, and the petitioner was arrested by a Maine State Trooper when he admitted to being on probation in New Hampshire and the trooper noticed that he appeared to be intoxicated. The petitioner's blood alcohol level was measured at .24 in a breathalyzer test. In the course of the trip, the petitioner also missed a meeting he had scheduled with his probation officer.

On November 23, 1993, a violation of probation was filed against the petitioner, charging him with failing to report to his probation officer at the designated time, failing to obtain permission before leaving the state, and failing to refrain from the use of alcohol. A hearing was held on the probation violation on December 29, 1993. The petitioner told his counsel that he wanted to fight the violations and withdraw his guilty plea, but after extensive discussions, he entered a plea of true to the charged violations. He was sentenced to seven and one-half to fifteen years with a disciplinary period added to the

minimum sentence.  That sentence was later vacated in response to a motion by the petitioner's counsel, and the petitioner was resentenced on March 18, 1994, to seven and one half to fifteen years on the kidnaping charge and three and a half to seven years on the burglary charge to run concurrently.

In May of 1995, the petitioner, proceeding pro se, filed a petition for a writ of habeas corpus in state court, raising the same issues that are raised in his petition to this court.  A hearing on the petition was held on May 28, 1997, in which the petitioner was represented by new counsel.  The petitioner's previous counsel appeared and testified as did the petitioner.  The petitioner's probation officer testified for the state.

The state court judge, McHugh, J., who presided at the petitioner's plea and sentencing proceeding and probation revocation proceeding, also heard his petition for habeas relief.  After the hearing, the court issued an order denying habeas relief.  The court denied the petitioner's motion for reconsideration, and the New Hampshire Supreme Court declined the appeal.

## Discussion

The respondent moves for summary judgment, contending that the state court properly applied legal standards consonant with

5

federal law and that the state court's decisions were based upon correct factual findings. Summary judgment is appropriate in a habeas proceeding, as in other cases, when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The petitioner raises several procedural objections to summary judgment. He contends that the factual findings made by the state court judge in his state habeas proceeding are not entitled to a presumption of correctness under § 2254(e) because he did not receive a fair hearing on his habeas claims. The petitioner primarily argues that Judge McHugh was not impartial, but he also says, without any support in the record, that the merits of his claims were not resolved in the state court proceedings, that the factfinding procedures were inadequate, and that material facts were not adequately developed there. To the extent the petitioner is seeking a hearing in this court on his habeas petition, he has not made the requisite showing. See § 2254(d)(2).

The petitioner argues that Judge McHugh was not impartial since he presided at the petitioner's guilty plea and sentencing

6

proceeding and probation revocation proceeding before also presiding on his state habeas petition. The petitioner also objects to the respondent's failure to provide him with evidence from his two criminal trials, on the same charges, and his probation record.

The petitioner contends that bias may be presumed because Judge McHugh would not want to expose his own and others' mistakes or misconduct in the prior proceedings. To prove his claim of bias, the petitioner must overcome the presumption of judicial impartiality by showing that Judge McHugh had an actual bias against him or a substantial interest in the outcome of the habeas proceeding. See Bracy v. Gramley, 520 U.S. 899, 904-05 (1997); Withrow v. Larkin, 421 U.S. 35, 55 (1975); New York State Dairy Foods, Inc. v. Northeast Dairy Compact Comm'n, 198 F.3d 1, 13 (1st Cir. 1999). The record does not show that Judge McHugh had any bias against the petitioner or any improper interest in the outcome of the case. The speculative basis for bias offered by the petitioner is an insufficient basis to overcome the presumption of judicial honesty and integrity.[1]  See, e.g.,

---

[1] Judge McHugh's statements at the probation revocation hearing that justice was not done when the petitioner was given suspended sentences on the serious charges against him do not indicate prejudice, but instead reflect the court's view of the circumstances relevant to what sentence should be imposed after a

7

<u>Brooks v. New Hampshire Supreme Court</u>, 80 F.3d 633, 640 (1st Cir. 1996). Therefore, the petitioner has not demonstrated that Judge McHugh was biased in the habeas proceeding. As a result, the petitioner cannot rely on allegations of bias to overcome the presumption of correctness that is to be afforded the state court's findings under § 2254(e). <u>See also</u> <u>Armstead v. Scott</u>, 37 F.3d 202, 208 (5th Cir. 1994) (affording presumption of correctness to findings made by judge who presided over trial and state habeas proceeding).

The petitioner again seeks discovery from the respondent that has previously been denied. Discovery is available in habeas proceedings pursuant to the Federal Rules of Civil Procedure "'if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.'" <u>Bracy</u>, 520 U.S. at 904 (quoting Rule 6(a) of the Rules Governing § 2254 Cases). As the court previously explained, <u>see</u> order of November 10, 1999, at page 4, the petitioner cannot challenge a voluntary and intelligent guilty plea made with the advice of competent counsel, and therefore, evidence of his guilt or innocence is not relevant to his habeas claims. His claim for purposes of his habeas petition therefore

violation of probation.

8

must focus on whether or not his plea was voluntarily and intelligently made with the advice of competent counsel.

Instead, the petitioner seeks evidence from the trials to show that someone else committed the crimes to which he pled guilty. Similarly, with respect to the petitioner's probation record, the issue is whether he entered a voluntary and intelligent plea of true to the probation violations charged, not the underlying circumstances that led to the violations. Therefore, the court in its discretion determines that the petitioner has not shown good cause for the discovery requested. The court proceeds to the merits of the petitioner's claims in support of habeas relief.

A petition for a writ of habeas corpus will not be granted unless the adjudication of the claim in the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d). Review of the legal standard used in the state court adjudication, the first consideration, requires a two-step analysis in which the court first asks whether the

Supreme Court has provided a rule of law governing the claim at issue.[2]  See O'Brien v. Dubois, 145 F.3d 16, 24 (1st Cir. 1998). If a clearly established rule is found, the court decides whether the state court's decision was contrary to the rule; if not, the court moves to the second step.[3]  See id.; see also Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) (explaining that both steps are necessary unless the ruling was contrary to the rule).  At the second step, the court determines whether the state court's decision constituted an unreasonable application of Supreme Court precedent.  See O'Brien, 145 F.3d at 24, Vieux, 184 F.3d at 64.

In a habeas proceeding pursuant to § 2254, a factual determination made by the state court is presumed to be correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  See § 2254(e).  For purposes of § 2254(e) "factual issues are defined as basic, primary, or historical facts:  facts in the sense of a recital of external

---

[2]The state law grounds raised by the petitioner in support of his claims for habeas relief are not cognizable in the context of § 2254.  See, e.g., Lewis v. Jeffers, 497 U.S. 764, 783 (1990).

[3]Unfortunately, the respondent largely ignored the state court's legal analysis, which is to be reviewed under § 2254(d)(1).  See, e.g., Coombs, 202 F.3d at 18.  Instead, the respondent mistakenly urged the court to defer to the state court's legal determinations.  See O'Brien, 145 F.3d at 21-22.

10

events and the credibility of their narrators." <u>Coombs v. Maine</u>, 202 F.3d 14, 18, (1st Cir. 2000) (internal quotations omitted).


A.   <u>Ineffective Assistance of Counsel</u>

The first four of the petitioner's claims assert ineffective assistance of counsel, which is addressed in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  The <u>Strickland</u> test requires claimants to prove that counsel's performance was both deficient and prejudiced his case.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>accord</u> <u>Roe v. Flores-Ortega</u>, ___ S. Ct. ___, 2000 WL 201148 at *5 (U.S. Feb. 23, 2000).  Deficient performance is representation "that falls below 'an objective standard of reasonableness' under prevailing professional norms when considering all the circumstances."  <u>Matthews v. Rakiey</u>, 54 F.3d 908, 924-35 (1st Cir. 1995) (quoting <u>Strickland</u>, 466 U.S. at 688).  Counsel's performance is to be evaluated by a highly deferential standard in light of the circumstances that existed in the case at the time of counsel's conduct.  <u>See</u> <u>Roe</u>, ___ S. Ct. at ___, 2000 WL 201148 at *5.  Prejudice "in this context means 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Prou v. United States</u>, 199 F.3d 37, 48-49 (1st Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 494).

11

The Strickland test for ineffective assistance of counsel has been determined to be one of the clearly established federal rules that permit analysis under the "contrary to" prong of § 2254(d)(1). See O'Brien, 145 F.3d at 25 & n.6. Therefore, the court first examines the state court's analysis of the petitioner's ineffective assistance of counsel claims in the state habeas proceeding to determine whether or not that adjudication was contrary to the Strickland standard. If the state court's adjudication is not contrary to the Strickland standard, this court must then determine whether the adjudication was an unreasonable application of that standard. See Vieux, 184 F.3d at 64.

1. Guilty plea.

The Strickland standard is also applicable to counsel's performance in the context of a guilty plea. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). To prevail, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 57, 59; accord United States v. Gonzalez, 202 F.3d 20, 25 (1st Cir. 2000).

The petitioner contends that his counsel was ineffective in

12

representing him in the plea and sentencing proceeding because he persuaded him to plead guilty despite his proclaimed innocence, because he failed to move for a Sarette hearing,[4] and because he gave him erroneous information and bad legal advice to plead guilty. More particularly, he contends that his counsel should have allowed him to withdraw from the plea agreement and go to trial, but instead, the petitioner alleges, his counsel badgered him and coerced him into the guilty plea. He argues that his counsel operated as an agent for the state instead of acting in his client's best interest. The petitioner asserts that he did not want to plead guilty to crimes he did not commit if his sentence would include probation.

In his order denying the petitioner's state habeas corpus petition, Judge McHugh evaluated the reasonableness of the petitioner's counsel's actions and advice in the context of the plea agreement and the guilty plea. Although the court did not explicitly articulate the legal standard it applied in considering the petitioner's grounds for habeas relief, the

---

[4]Under New Hampshire state law, a Sarette hearing is held on a defendant's motion to withdraw a guilty plea, before sentence is imposed, to determine whether it would be fair and just to allow withdrawal of the plea. See State v. Sarette, 134 N.H. 133 (1991).

standard is apparent from the analysis used.[5]

Judge McHugh found that the initial plea negotiations did not include a period of probation, but that the petitioner became aware that probation would be a part of the agreement within a week of the scheduled trial date. The petitioner understood what probation entailed because he had served a term of probation as part of another conviction. Although the petitioner initially agreed to the plea offer, including probation, he changed his mind and told his counsel on the morning of the hearing that he did not want to plead guilty if probation were part of the sentence.

Counsel then spent three to four hours attempting to resolve the petitioner's objections to the plea agreement. The petitioner finally agreed to plead guilty with a probation period of two years with special conditions to permit him to travel out of state and forbidding contact with certain people. Judge McHugh concluded, "The Court cannot fault Attorney Rothstein for approaching the problem in the fashion he did, given the

---

[5]While the petitioner accurately notes that Judge McHugh did not cite legal authority in support of his analysis, that omission does not necessarily affect the validity of the decision as long as "the state court generally articulates and applies tenets that can reasonably sustain its judgment." Bui v. DiPaolo, 170 F.3d 232, 243 (1st Cir. 1999).

14

potential benefit to Mr. Plumer of him entering a no-time plea to these most serious charges." State Court Habeas Corpus Order, 91-S-1831, 92-S-1280, at 5, June 9, 1997. Judge McHugh found no evidence that the petitioner lacked an understanding that probation would be part of his sentence or that his counsel improperly induced him to enter the plea, finding that the petitioner "does not suggest that he entered his plea without understanding that probation would be a component of sentencing, nor did he testify that Attorney Rothstein coerced, manipulated or tricked him into entering a plea." Id. at 6. In fact, the petitioner testified at his plea and sentencing proceeding that he was satisfied with his counsel's representation. See Plea and Sentencing transcript at 7.

Judge McHugh also found that the petitioner had a great deal to lose by going to trial and that the negotiated agreement with suspended sentences and probation was very favorable to him. The judge held, "Recognizing the potential risk of trial and recognizing the favorable aspects of the State's plea offer, it was certainly in the best interests of the plaintiff to have Attorney Rothstein fully explore a plea rather than to throw up his hands and demand a trial simply because Mr. Plumer did not like the possibility of potentially onerous probation conditions." Id. at 5-6. Judge McHugh concluded that the

15

petitioner pled guilty "with full knowledge and acceptance of the negotiated sentence received" and also that he had the benefit of competent counsel during the proceeding.[6] Id. at 6, 12-13.

Judge McHugh's analysis follows the Strickland-Hill standard by examining the reasonableness of counsel's performance and any prejudice that might have resulted to the petitioner. The state court's conclusion that the petitioner did not receive ineffective assistance of counsel was not contrary to well-established federal law. The state court's factual findings are presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. See § 2254(e)(1). The petitioner has not carried the burden of rebutting the state court's factual findings, and a review of the transcripts of the state court proceedings, included in the record, does not show that the state court's findings were unreasonable based upon the evidence of record. The state court's factual findings support the determination that the petitioner's counsel's representation of the petitioner during the plea and sentencing proceeding was reasonable. Therefore, the state court's adjudication of the petitioner's claims asserting ineffective assistance of counsel

---

[6]Judge McHugh also concluded that, "From all of the evidence submitted to the Court, it is clear that the real dispute in this case is not whether the plaintiff wanted to vacate his plea of guilty, but rather it is in determining what particular conditions of probation the plaintiff was to be placed under." State Habeas Order at 6-7.

16

at his plea and sentencing proceeding was neither contrary to nor an unreasonable application of federal law as determined by the Supreme Court.  See O'Brien, 145 F.3d at 25 ("the state court decision must be so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes").

No genuine issue remains to be decided with respect to the petitioner's ineffective assistance of counsel claims pertaining to his plea and sentencing proceeding.  Summary judgment is appropriate in the respondent's favor as to those claims for habeas relief.

### 2.  Probation revocation.

The petitioner also claims ineffective assistance of counsel with respect to his counsel's representation during the probation violation proceeding.  The petitioner contends that his counsel's advice to plead true to the charged probation violations was constitutionally ineffective, and that his counsel should have presented a defense to the charged violations.  The Strickland standard also governs a review of counsel's performance during a revocation proceeding.[7]  See, e.g., United States v. Allen, 157

---

[7]The respondent does not dispute the petitioner's constitutional right to counsel during the probation revocation proceeding.  See Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973); United States v. Yancey, 827 F.2d 83, 89 (7th Cir. 1987).

17

F.3d 661, 666 (9th Cir. 1998).

The petitioner was charged with three probation violations: missing a meeting with his probation officer, drinking alcohol, and leaving the state without permission, all of which occurred during his trip to Maine. The petitioner argues that his counsel should have moved to withdraw his plea or should have challenged the charged probation violations on the ground that the imposed intensive terms of his probation were contrary to his sentence of "regular" probation. In particular, the petitioner contends that the condition that he abstain entirely from alcohol was more intensive than the usual provision that a probationer not use alcohol to excess, and that although his sentence did not require participation in a sexual offender program, his probation officer did require evaluation. He also contends that his sentence would have allowed him to relocate in another state but that the terms of intensive probation prevented relocation.

The state court found, however, that "[t]he violation that has resulted in him serving a severe sentence was not on one specialized condition of intensive probation, but was rather three separate violations of what can be said to be regular and minimal probation terms." State Habeas Order at 11. The petitioner admitted at the state habeas hearing that because his blood alcohol level was measured at .24 when he was arrested in Maine, he had been drinking to excess which would have violated

18

even a "regular" probation condition.  He also admitted that he knew that a condition of "regular" probation was that he not leave the state without permission.

The state court found that there was no doubt that the petitioner understood his right to contest the charged probation violations.  See State Habeas Order at 12.  The court also found that the petitioner "had the benefit of competent counsel throughout these proceedings," that his counsel always acted in his best interests, and that the petitioner's plea of true to the charged probation violations was "knowingly and intelligently made with full knowledge of all consequences."  Id. at 12-13.

The state court's adjudication of the issue of the effectiveness of the petitioner's counsel at the probation revocation proceeding was neither contrary to nor an unreasonable application of the Strickland standard.  In addition, the petitioner has not presented clear and convincing evidence that the state court's factual findings were not correct, and the record evidence, including the transcripts, supports the state court's factual findings.  Therefore, no factual issue remains to be decided with respect to the petitioner's claim of ineffective assistance during his probation revocation proceeding.

B.  Due Process

The petitioner's remaining five claims in support of habeas

19

relief allege violations of his right to due process in his plea and sentencing proceeding, the state court's handling of his probation sentence, and the sentence imposed for his probation violations.

### 1. Guilty plea.

Two of the petitioner's due process claims arise from the circumstances of his guilty plea. The petitioner contends that his due process rights were violated because the state court did not order a Sarette hearing to inquire into whether fair and just cause existed to allow him to withdraw his guilty plea and because "the [state] Court accepted his plea of guilty without first ensuring that this plea was made voluntarily, knowingly and intelligently." See Statement of Questions Presented, ¶¶ 5, 6. The petitioner argues that he was coerced by his counsel to accept the guilty plea, despite his professed innocence and desire to stand trial. He contends that the state court was aware of his change of heart with respect to the guilty plea and should have surmised that his plea was involuntary because he entered the plea after four hours of discussions with his counsel.

The petitioner's claim that the state court should have required a Sarette hearing raises a state law claim, not actionable under § 2254, except to the extent that the claim in

20

essence challenges the constitutional validity of the petitioner's guilty plea.[8] See, e.g., United States v. Avellino, 136 F.3d 249, 261 (2d Cir. 1998) (discussing scope of "fair and just reason" to withdraw a guilty plea to include grounds of constitutional and nonconstitutional dimension). Therefore, both of the petitioner's claims pertaining to the guilty plea and sentencing proceeding are interpreted to challenge the constitutional validity of his plea.

The due process requirements for a guilty plea are well established in Supreme Court precedent. "[D]ue process requires that the defendant's entry of a guilty plea be a voluntary, knowing, and intelligent act, 'done with sufficient awareness of the relevant circumstances and likely consequences.'" United States v. Noriega-Millan, 110 F.3d 162, 166 (1st Cir. 1998) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)); see also Bousley v. United States, 523 U.S. 614, 618 (1998). A guilty plea is involuntary if threats or promises to stop improper harassment are used to coerce the plea. See Brady, 397 U.S. at 755. Other federal courts have interpreted the due process voluntariness requirement to permit significant pressure

_____

[8]Under both federal and state law, a criminal defendant has no absolute right to withdraw a guilty plea before sentencing, but instead must show that it would be "fair and just" to withdraw the plea. See United States v. Ribas-Dominicci, 50 F.3d 76, 78 (1st Cir. 1995); Sarette, 134 N.H. at 137-38.

21

and strong urging from defense counsel in favor of a guilty plea.

See, e.g., Miles v. Dorsey, 61 F.3d 1459, 1470 (10th Cir. 1995) (citing cases).

The petitioner did not establish that his counsel's performance was constitutionally deficient in the plea and sentencing proceeding and for the same reasons, based on the same record, he cannot establish that the state court judgment was contrary to or an unreasonable application of the due process requirements established in Brady. Judge McHugh thoroughly inquired into the petitioner's knowledge and understanding of his right to go to trial on the charges and the consequences of his guilty plea at the plea and sentencing proceeding and was satisfied that the petitioner's plea was made voluntarily, intelligently, and knowingly. Judge McHugh then heard the petitioner's and his counsel's testimony at the state habeas proceeding addressing the voluntariness of his plea. In the order on the state habeas petition, Judge McHugh explained that the petitioner did not testify that his counsel coerced, manipulated, or tricked him into pleading guilty. The court also found that "[t]he record of the plea and sentencing reflects a knowing, intelligent and free-willed entrance of a guilty plea with full knowledge and acceptance of the negotiated sentence received." State Habeas order at 6. The court also wrote, "His counsel was not ineffective and his pleas to both the initial crimes and the probation violations were knowingly and

intelligently made with full knowledge of all consequences."  Id.
at 13.

The state court's determination of the voluntariness of the petitioner's plea is neither contrary to nor an unreasonable application of federal law.[9]  See § 2254(d)(1).  The state court's factual findings are entitled to a presumption of correctness, see § 2254(e), and the state court's decision to deny habeas relief on the grounds of an involuntary plea was not, in any case, an unreasonable determination of the facts based on the record, see § 2254(d)(2).  See also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").  Therefore, the respondent is entitled to summary judgment on the petitioner's claims of due process violations at his plea and sentencing proceeding.

2.  Probation conditions.

The petitioner brings two claims based on the conditions of

---

[9]Although there is clearly defined Supreme Court precedent with respect to the due process requirements for a guilty plea, the particular issue the petitioner raises, involuntariness due to pressure from his counsel, does not appear to have been reduced to a specific rule.  See O'Brien, 145 F.3d at 25.  For that reason, following the "unreasonable application" prong of the § 2254(d)(1) test, the court also considered the Supreme Court's precedent as to voluntariness as well as more factually specific interpretations of the voluntariness requirement from other federal courts.

his probation.  He argues that the state court violated his right to due process by permitting the probation department to impose conditions of probation that were not part of the sentence or the plea agreement.  He also argues that the state court violated his right to due process by not enforcing its order clarifying his sentence to require the probation department to adhere to the conditions of probation under the sentence.

Supreme Court precedent requires the state to adhere to the promises made in securing a plea agreement.  See Santobello v. New York, 404 U.S. 257, 262 (1971); see also Mabry v. Johnson, 467 U.S. 504, 510-11 (1984).  In this case, the state court granted the petitioner's motion to clarify his sentence, and ordered that the petitioner was subject to "regular and not intensive probationary supervision."  Order, 91-S-1831, 92-S-1280, 92-S 1541-1542, May 27, 1993, at 3.  The state court judgment, therefore, imposed the terms of the plea agreement as the petitioner requested.

If the petitioner argues that the probation department failed to comply with the judgment, that claim does not raise an actionable basis for habeas relief, since Federal habeas relief is limited to one who is "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  § 2254(a).  Cf. Sandin v. Connor, 515 U.S. 472, 482-84

25

(1995) (discussing due process requirements for conditions of confinement in context of civil rights action). In addition, the petitioner is no longer subject to the judgment imposing the suspended sentence and probation, which has been vacated, but instead is now serving sentences that were imposed as the result of the violations of the conditions of his probation after he entered a plea of true to the probation violations. Therefore, the petitioner's challenges to the conditions of his probation are not cognizable grounds for habeas relief in this case.

The petitioner also seeks habeas relief from his current incarceration on the grounds that he is now serving prison sentences because of intensive probation conditions, imposed by the state probation department, that were not part of his plea agreement or his sentence. The record, however, does not support his claim. In response to the petitioner's motion, the court clarified the conditions of his probation as "regular" instead of the "intensive" conditions imposed by the probation department. In the state habeas order, the state court forthrightly acknowledged that the petitioner "is correct when he argues that he was wrongfully placed on intensive probation after his plea and sentencing."[10] State Habeas Order at 10. The state court

_____

[10]The respondent's argument that the issue of the conditions of the petitioner's probation was not exhausted is meritless. As the petitioner points out, the issue was addressed in the state habeas proceeding, which was appealed to the New Hampshire

wrote, "[h]ad the court refused to grant his Motion to Clarify Sentence and removed [sic] his intensive probation status, then Mr. Plumer's Petition for Writ of Habeas Corpus might have merit." Id. at 11.

The petitioner also contends that the conditions of his probation did not change after the state court clarified his sentence and that the charged probation violations were the result of a continuation of the intensive conditions. The state court found, however, that the petitioner not only violated the more intensive conditions imposed by the probation department, but also violated the conditions that he understood ordinarily applied to probation including no excessive use of alcohol, permission required to leave the state, and attending meetings with his probation officer. The state court's factual findings are presumed correct and are also amply supported by the record of the probation violation proceeding and the state habeas proceeding. Therefore, the petitioner cannot show that he is in custody due to state court adjudications that were contrary to or an unreasonable application of Supreme Court precedent.

3. Sentence following probation revocation.

The petitioner claims that his right to due process was violated by the state court's decision to revoke his probation

_____

Supreme Court.

27

and impose the full sentences, which were initially suspended, in response to his probation violations. He argues that his "technical" parole violations, that is drinking, leaving the state without permission, and missing a meeting with his probation officer, did not warrant the severe sanction of revocation of his probation.

Due process affords certain procedural protections before probation may be revoked. See Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973) (applying the standards of Morrissey v. Brewer, 408 U.S. 471 (1972) to probation revocation proceedings). "To revoke probation the sentencing court must make both a retrospective determination that the probationer has violated a condition of his probation, and a discretionary, prospective determination that any violation(s) warrants revocation." United States v. DiIanni, 87 F.3d 15, 16 (1st Cir. 1996) (citing Black v. Romano, 471 U.S. 606, 611 (1985)). "The decision to revoke probation is generally predictive and subjective in nature, and the fairness guaranteed by due process does not require a reviewing court to second-guess the factfinder's discretionary decision as to the appropriate sanction." Black, 471 U.S. at 613 (citation omitted).

In this case, the petitioner, who was represented by counsel, entered a plea of true to the charged violations of the terms of his probation. The retrospective prong of the due

28

process analysis for probation violation proceedings was satisfied by the plea. The state court then decided that the appropriate sanction was to revoke the petitioner's probation and impose the sentences that previously had been suspended. In making the decision, Judge McHugh explained that he had never been comfortable with the recommended suspended sentences because of the heinous nature of the crimes charged, but that he accepted the recommended sentences based on his acquiescence in the plea agreement system.

Judge McHugh reminded the petitioner that he had been specifically warned during the sentencing that he was at risk of serving the full sentences if he violated the terms of his probation. Judge McHugh then said, "You have pled guilty to a violation of the conditions of your probation and I am going to uphold the State's recommendation and do justice, which wasn't done nine months ago. It's going to be done today." Probation violation transcript at 42. Judge McHugh vacated the suspended sentences and sentenced the petitioner to the full time for the burglary charge to be served concurrently with the sentence for the kidnaping charge.[11] Judge McHugh also imposed a condition that the petitioner participate in the sexual offender program at

---

[11]The sentence was later vacated and he was resentenced to reflect the individual sentences for kidnaping and burglary, stand committed, to be served concurrently.

the prison.

Despite the petitioner's negative interpretation of Judge McHugh's statement about justice being done, the remarks imply nothing more than the court's subjective and predictive evaluation of the petitioner's circumstances in light of both the probation violations and the crimes of which he was convicted through his guilty pleas.  See Black, 471 U.S. at 613; see also United States v. Morin, 889 F.2d 328, 332 (1st Cir. 1989).  The petitioner was afforded the due process required at probation violation hearings under applicable Supreme Court precedent.  The state court's decision to revoke probation and to impose the sentences, which had previously been suspended, is neither contrary to nor an unreasonable application of Supreme Court precedent pertaining to the due process considerations in probation revocation proceedings.


## Conclusion

For the foregoing reasons, the respondent's motion for summary judgment (document no. 22) is granted.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge


30

March 21, 2000

cc:  Joseph W. Plumer, pro se
     Walter L. Maroney, Esquire