**PETITION OF RJF INTERNATIONAL CORPORATION for Exoneration from or Limitation of Liability, Civil and Maritime.**

No. CIV.A. 01–588S.

United States District Court,
D. Rhode Island.

May 7, 2003.

Robert E. Collins, Thomas E. Clinton, Clinton & Muzyka, P.C., Boston, MA, for Petitioner.

John S. Foley, Decof & Decof P.C., Providence, RI, John W. Merting, Gulf Breeze, FL, for Claimant.

### DECISION AND ORDER

SMITH, District Judge.

This matter is before the Court (sitting in Admiralty) on Claimant Kimberly M. Hanna's[1] ("Claimant") Motion to Compel Maintenance and Cure Benefits and on Petitioner RJF International's ("Petitioner" or "RJF") Cross–Motion for Termination of Maintenance and Cure Benefits.[2] The Claimant has also moved for attorneys' fees incurred in connection with this motion. On March 19, 2003, the Court held an evidentiary hearing on the parties' motions. Post hearing briefs were submitted by the parties on April 10, 2003. After considering the evidence and arguments presented at the hearing and submitted by the parties, the Court rules as follows.

*Facts*

This action arises out of an accident that occurred on August 11, 2001 on M/V Reflections (the "Vessel"), while it was docked at Bannister's Wharf in Newport, Rhode Island. Avery, a seaman working on the Vessel, suffered severe brain injuries when he fell from the Vessel into the waters of Newport Harbor. As he fell from the Vessel, Avery struck his head on a dock and remained submerged for seven to ten minutes before local dock workers were able to locate him and retrieve him from the water.

Avery received his initial medical treatment at Newport Hospital and Rhode Island Hospital. Avery remained at Rhode Island Hospital as an inpatient in critical condition until September 6, 2001, when at the request of his family he was transferred to Twin Cities Hospital in Niceville, Florida. He was released from Twin Cities Hospital on October 15, 2001.

---

1. The injured party in this case is James Avery ("Avery"). Kimberly Hanna, James' mother, has brought this claim, as well as other causes of action, on his behalf.

2. These motions have been brought as part of a broader limitation-of-liability proceeding filed pursuant to Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, in which the Petitioner seeks to limit its liability to the Claimant. In response to the Petitioner's limitation-of-liability proceeding under Rule F, the Claimant has filed a Jones Act claim under 46 U.S.C. § 688, *et seq.* and a common law breach of warranty of seaworthiness claim against the Petitioner. These claims are not affected by the resolution of the motions currently before the Court, and will be resolved in an upcoming bench trial.

On October 30, 2001, Avery was admitted to Children's Hospital of Atlanta for acute inpatient rehabilitation that lasted until March 19, 2002. On April 4, 2002, Avery's primary treating physician, Dr. J. Benjamin Renfroe, performed a neurological assessment and determined that Avery suffers from moderate to severe post hypoxic encephalopathy.[3] Due to his condition, Avery now has the mental capacity of an 18–24 month old child, and no longer has any functional control over his muscles. As a result of the lack of muscle control, he suffers from mild to severe contractures[4] and spasticity.[5] He requires assistance with everyday tasks such as bathing and eating.

Since his dismissal from Children's Hospital, Avery has received around-the-clock, in-home medical care at a condominium in Destin, Florida, as well as at his mother's house in Fort Walton Beach, Florida. Avery receives physical therapy five days a week, speech therapy three days a week, and occupational therapy one or two times a week.

Over the past year and a half, the Petitioner has made substantial maintenance and cure payments to cover Avery's medical expenses.[6] Until the filing of these motions, the Claimant has requested, and the Petitioner has provided, maintenance and cure payments without the need for judicial intervention. However, on October 4, 2002, the Claimant submitted requests to the Petitioner detailing additional inpatient treatment sought for Avery. The Claimant requested the following: (1) inpatient admission at the Rehabilitation Institute of Chicago; (2) enrollment in the Brain Injury Day Program at West Florida Hospital following his discharge from the Rehabilitation Institute of Chicago; (3) ongoing care and treatment by Dr. David LeMay, M.D., a physiatrist at the Pensacola Physical Medicine and Rehabilitation Group; and (4) reimbursement for medical equipment purchased by the Claimant.[7]

Upon receipt of this request, Petitioner had Avery examined by two of its own medical experts and concluded that Avery had reached the point in his medical treatment where he no longer would benefit from inpatient rehabilitation treatment. Petitioner believes that Avery's medical condition is permanent and incapable of further improvement. Accordingly, Petitioner denied the Claimant's request for payments with respect to the further treatment and now seeks termination of its maintenance and cure obligation. The Claimant responded to this denial and petition with her own claim to compel the requested treatment.

*Discussion*

1. *Maintenance and Cure*

 The law has long required that shipowners ensure the maintenance and

---

3. Hypoxic encephalopathy is a disorder of the brain caused by a period of decreased levels of oxygen to the brain. *See* Stedman's Medical Dictionary 588 (27th ed.2000).

4. Contractures are limitations in the range of motion of a joint resulting from tight muscles and tight tendons. LeMay Deposition at 27. *See also* Stedman's Medical Dictionary at 405.

5. Spasticity is increase in muscle tone while the muscles are at rest, often the result of concentrated muscle spasms. *See* Stedman's Medical Dictionary at 1662.

6. As of the date the parties' motions were filed with the Court Petitioner had made approximately $950,000 in maintenance and cure payments.

7. At oral argument, counsel for the Claimant informed the Court that the expenses relating to the medical equipment were provided by a local Destin, Florida charity. Therefore, this Court no longer needs to consider that request.

cure of seamen who become sick or injured while in the service of the ship. *See Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 454 (1st Cir.1996) (citing *Benedict on Admiralty*, §§ 41–42 (6th ed.1993)). Maintenance and cure refers to the provision of (and most often, payment for) food and lodging ("maintenance") as well as any necessary health-care expenses ("cure") incurred during the period of recovery from the injury. *LeBlanc v. B.G.T. Corp.*, 992 F.2d 394, 397 (1st Cir.1993). A seaman's entitlement to maintenance and cure is, for the most part, automatic upon falling injured or ill. "The right attaches 'largely without regard to fault; a seaman may forfeit his entitlement only by engaging in gross misconduct.' " *Ferrara*, 99 F.3d at 454 (quoting *LeBlanc*, 992 F.2d at 397). As the Supreme Court has indicated, admiralty courts are to construe liberally the right of seamen to maintenance and cure payments, with all doubts being resolved in favor of the seaman. *Vaughan v. Atkinson*, 369 U.S. 527, 532, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (citing *Warren v. United States*, 340 U.S. 523, 530, 71 S.Ct. 432, 95 L.Ed. 503 (1951)).

While the limitations of the doctrine of maintenance and cure have been developed in some respects, the point at which a shipowner may terminate its "cure" obligation has not been precisely delineated. The Supreme Court, however, has provided some guidance in this area. *See Vella v. Ford Motor Co.*, 421 U.S. 1, 5, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975); *Farrell v. United States*, 336 U.S. 511, 517, 69 S.Ct. 707, 93 L.Ed. 850 (1949). In *Farrell*, a merchant marine working aboard a cargo vessel fell into a drydock and was injured. After the seaman, Farrell, was treated for his injuries in a number of hospitals, he was released after it was determined that he was completely disabled. *Id.* at 513, 69 S.Ct. 707. The lower court determined that the duty of the shipowner to furnish maintenance and cure does not extend beyond the time when the maximum cure possible has been effected. *Id.* On appeal, Farrell contended that he was entitled to maintenance and cure as long as he was disabled, which in his case was for life. *Id.* The Supreme Court, in upholding the lower court's decision that a seaman is not automatically entitled to maintenance and cure payments for life, held that a shipowner only owes maintenance and cure to an injured seaman "until the maximum cure is obtained," or until the seaman is "so far cured as is possible." *Id.* at 518, 69 S.Ct. 707.

Since the *Farrell* decision, courts have phrased the termination point of maintenance and cure payments in different ways, but the essence of the rule is that a shipowner is only responsible for a seaman's maintenance and cure until the seaman has reached maximum medical recovery. *See, e.g., Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir.1996) (payments terminate when it is "probable that further treatment will result in no betterment in the claimant's condition"); *Cox v. Dravo Corp.*, 517 F.2d 620, 626 (3rd Cir.1975) (holding that the duty of maintenance and cure ends when a disability has been found to be permanent); *Gorum v. Ensco Offshore Co.*, Civ.A 02–2031, 2002 WL 31528460, *5 (E.D.La. Nov.14, 2002) (holding that benefits continue until a claimant has reached "maximum medical improvement"); *DiBenedetto v. Williams*, 880 F.Supp. 80, 88 (D.R.I.1995) (holding maintenance and cure obligation had not ceased because claimant had not yet "reached a maximum medical cure"). Accordingly, a shipowner is only responsible for treatment that is curative in nature, and not for medical care that is solely palliative such as the alleviation of pain and discomfort. *Cox*, 517 F.2d at 626.

RJF contends that its maintenance and cure obligation has terminated because Avery has reached the point of maximum cure due to the permanency of his medical condition. *See* Petitioner's Post Hearing Brief ("Petitioner's Brief") at 5. In support of this contention, RJF refers the Court to Avery's lack of significant progress during the past twenty months, in which he has undergone aggressive, continuous physical and occupational therapy on both an inpatient and outpatient basis. However, in so arguing, RJF concedes that further rehabilitation may result in increased muscle tone, range of motion, and reduce Avery's contractures. *See* Petitioner's Brief at 9.

In order to evaluate the permanency of Avery's injury, RJF also had Avery examined by two of its own experts: Dr. Gary Miller, M.D. and Dr. Thomas Burns, Psy.D. After a number of examinations, Dr. Miller concluded that Avery "may continue to have some brain healing and recovery from natural processes for two to three years post-injury, [but] the future gains will most likely be limited." Petitioner's Ex. 9. Dr. Miller also concluded that "James has a severe and permanent injury to the brain ... and has achieved a substantial portion of the improvement that he will experience." *Id.*

Likewise, Dr. Burns determined that Avery is only likely to experience "spontaneous recovery." Petitioner's Ex. 8. As a result, Dr. Burns concluded that further inpatient hospitalization at a facility such as the Rehabilitation Institute of Chicago would be unnecessary because "Jamie's condition ... is a permanent condition that has left him disabled." *Id.* In other words, while further treatment will not cure Avery's condition, "it may serve to reduce his and families [sic] frustration in dealing with his current deficits." *Id.*

Avery's treating physicians, who are more familiar with his medical history, take a differing view. Dr. David E. LeMay, M.D., Avery's physiatrist, indicated that Avery's condition is still capable of improvement.

> I believe that if he were to have an inpatient rehabilitation stay, I think he would have medical improvement and cognitive improvement; and his improvement by no means, even after he's done, is complete. This is not a static condition at this point, and what this is is just a part of his rehabilitation process. This is not an opportunity to readmit him and have him go through therapy for two or three weeks and then say, "Well he's done, he did it." It's not over. He still needs ongoing therapy even after he leaves from a rehab setting, and, in fact, I think probably if it were possible to get him into an outpatient, or a day injury—or a day program where he can still get some daily therapy at this point, or at least after the inpatient stay would be beneficial to him.

LeMay Deposition at 53–54. Dr. LeMay also noted that further rehabilitation would be more than simply palliative, and would improve his medical condition. *Id.* at 55.

Dr. Benjamin Renfroe, M.D., Avery's neurologist, testified that aggressive rehabilitative intervention would improve his medical condition.

> And as for the other issues, again, I feel this young man is at a point in his rehabilitation that aggressive intervention in a facility with expertise to provide very, very frequent, virtually around the clock intervention would in the long term help this young man a great deal and save a lot of money. I'm sticking my fingers in the dike, and I need somebody to take the ball and

move it down the field, to make a metaphor.

Renfroe Deposition at 102. Thus, the medical opinions of Avery's treating physicians support the Claimant's contention that Avery has not reached maximum medical recovery.

RJF provides detailed, medically supported reasons for its belief that Avery's medical condition has reached the point of maximum medical recovery. Nonetheless, the Claimant provides equally compelling evidence indicating that Avery's medical condition is still capable of improvement. In light of the conflicting evidence, and the fact that this Court must construe the law in Avery's favor, *see Vaughan,* 369 U.S. at 532, 82 S.Ct. 997, this Court holds that the Claimant is entitled to the requested maintenance and cure payments. In this Court's view, Avery's treating physicians have the most experience with Avery's condition. Consequently, those physicians are better suited to address his current condition, future needs, and prognosis. Moreover, it appears that RJF's experts acknowledge the likelihood of future gains, even while disagreeing with Avery's treating physicians as to the appropriate facility for treatment.

While the Court believes further treatment is warranted based on the likelihood of future improvement, this ruling should not be interpreted as a signal from the Court that Avery's condition will never reach a state of maximum medical recovery warranting termination of RJF's maintenance and cure obligation. This period of inpatient rehabilitation and follow-up care may reveal that Avery has reached maximum medical recovery, but the evidence does not compel such a determination at this time.

### 2. *Attorneys' Fees*

The Claimant has moved for an award of attorneys' fees based upon the delay in the payment of maintenance and cure. In order to prevail on an attorneys' fees request relating to a refusal to make maintenance and cure payments, the First Circuit has ruled that a Claimant must prove the shipowner was "callous, willful, or recalcitrant in withholding [maintenance and cure] payments." *Robinson v. Pocahontas, Inc.,* 477 F.2d 1048, 1051 (1st Cir.1973). Up until the point the parties disagreed about the need for further inpatient rehabilitation, RJF made close to $1,000,000 in maintenance and cure payments without the need for judicial intervention. It was not until the Claimant requested additional rehabilitation that RJF questioned the need for further payments. At that point, RJF sought independent, medical expertise to determine the permanency of Avery's condition. Based on the evidence reviewed by this Court, the determination that Avery has not reached maximum medical improvement and is therefore entitled to the treatment the Claimant seeks for him, is a relatively close call—one on which reasonable minds could differ. This Court does not believe that RJF's investigation and opposition under these circumstances was willful, recalcitrant, or in bad faith. Consequently, Claimant's request for attorneys' fees is denied.

### *Conclusion*

For the reasons stated above, this Court orders as follows:

1. Petitioner's Motion for Termination of Maintenance and Cure Benefits is DENIED;

2. Claimant's Motion to Compel Payment of Maintenance and Cure Benefits is GRANTED;

3. Claimant's request for attorneys' fees is DENIED; and

4. Petitioner is further ORDERED to provide payments for medical ex-

penses associated with James Avery's (a)inpatient admission at the Rehabilitation Institute of Chicago; (b) enrollment in the Brain Injury Day Program at West Florida Hospital following his discharge from the Rehabilitation Institute of Chicago; and (c) ongoing care and treatment by Dr. David LeMay, M.D., a physiatrist at the Pensacola Physical Medicine and Rehabilitation Group.

It is so ordered.