# United States Court of Appeals

## For the First Circuit

No. 03-1696

PETITION OF RJF INTERNATIONAL CORPORATION FOR EXONERATION
FROM OR LIMITATION OF LIABILITY, CIVIL AND MARITIME.

APPEAL FROM THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya, Circuit Judge,

and Stahl, Senior Circuit Judge.

Thomas E. Clinton with whom Clinton & Muzyka, P.C. was on brief for petitioner, appellant RJF International Corporation.
Howard B. Klein with whom John S. Foley and Decof & Decof were on brief for claimant, appellee Kimberly Moody Hanna, as legal guardian of James Avery.

January 8, 2004

**BOUDIN**, <u>Chief Judge</u>.  On August 11, 2001, James Avery, then 18 years old, was employed on the M/V Reflections, a yacht docked in Newport, Rhode Island.  In the course of his duties, he fell from the yacht, struck his head on the dock, and fell into the water.  Before his rescue, he spent 7 to 10 minutes under water.  The result was anoxic brain injury--anoxic refers to the lack of oxygen--so severe that his life was despaired of.

By the time of his discharge from the last of several hospitals (in March 2002), Avery could not speak intelligibly but could follow commands, respond to questions by closing his eyes, make sounds, and was starting to use his head and chin to activate assistive equipment.  His doctors then formulated plans for further rehabilitation, opining that more cognitive and functional progress was possible.  They contemplated that Avery would be given inpatient treatment at a specialized institute in Chicago and then receive further outpatient day treatment at a Florida facility.

During this time, the vessel owner had paid heavily for Avery's medical expenses as part of its obligation to provide maintenance and cure for an injured seaman.  <u>See</u> <u>Calmar S.S. Corp.</u> v. <u>Taylor</u>, 303 U.S. 525, 527-29 (1938).  Obtaining its own medical evaluation, the vessel owner concluded that Avery now suffered from permanent conditions that were beyond its responsibility under the maintenance and cure doctrine.  When the owner refused to fund the new treatment plan, Avery's guardian filed a motion to compel

-2-

payment, and the owner cross moved to terminate maintenance and cure benefits. Both motions were filed in the context of an admiralty proceeding that had been initiated by the owner on December 12, 2001, to limit its liability with regard to this incident. 46 U.S.C. app. §§ 181-196 (2000); Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

The district court held an evidentiary hearing in April 2003, receiving on Avery's behalf deposition testimony from Avery's treating physicians and his mother, and Avery's medical records; the owner offered testimony from a neuro-psychologist and a letter from a neurologist. On May 7, 2003, the district court issued a decision granting Avery's motion to order further care and denying the owner's motion. In re RJF Int'l Corp., 261 F. Supp. 2d 101, 106-07 (D.R.I. 2003). The court found that Avery had not yet reached a point of "maximum medical recovery" and that therefore the obligation to provide maintenance and cure continued. Id. at 105-06.

On this appeal, the owner makes three different arguments. The first is that the district court misread the law because it ordered maintenance and cure for one who now suffers from brain damage and associated symptoms (e.g., spastic muscle reactions) that are clearly permanent. This, says the owner, is contrary to Farrell v. United States, 336 U.S. 511 (1949), Vella v.

-3-

Ford Motor Co., 421 U.S. 1 (1975), and other cases limiting maintenance and cure to the period in which the injured seaman is moving toward recovery.[1]

When his condition has stabilized and further progress ended short of a full recovery, the seaman may still have a remedy to compensate him for his permanent injury,[2] but is no longer entitled to maintenance and cure. Thus, in Farrell the Court said that maintenance and cure did not extend to ongoing medical care to ease the pain of headaches and to control convulsions deemed permanent conditions. 336 U.S. at 512-13, 519. In Vella, relief from permanently recurring dizzy spells was denied, although the shipowner was required to pay maintenance and cure up to the point where the condition was medically diagnosed as permanent. 421 U.S. at 2-6.

---

[1]See generally Pelotto v. L & N Towing Co., 604 F.2d 396, 400 (5th Cir. 1979) ("Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved."); Cox v. Dravo Corp., 517 F.2d 620, 623, 627 (3d Cir. 1975) (maintenance and cure payments not required if additional treatment is only to "arrest further progress of the disease or to relieve pain").

[2]The traditional remedy for damages is based on the unseaworthiness of the vessel under general maritime law; but a statutory remedy for negligence under the Jones Act is also commonly employed, 46 U.S.C. app. § 688 (2000); see Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449, 453-54 (1996), and Avery has claims under both theories pending before the district court. In re RJF, 261 F. Supp. 2d at 102 n.2.

In this case, the difficulty for the owner is that the district court recognized the fuzzy boundary between improvement and palliation, but it found that the evidence showed that Avery was still capable of improvement through continued treatment. In re RJF, 261 F. Supp. 2d at 105-06. The testimony of Avery's doctors is straightforward that further long-term improvement is still possible, and even the competing diagnoses by the owner's experts leave some room for such a conclusion. Certainly the district court did not commit clear error on this issue of fact. See Capone v. Boat St. Victoria, 1989 A.M.C. 1782, 1797 (D. Mass. 1989).

At some points in his main brief and oral argument, counsel for the owner appears to suggest that the case law cuts off maintenance and cure whenever a permanent condition exists, regardless of whether its severity can be reduced. But this reading would contradict repeated references in the case law to maximum medical recovery as the dividing line. E.g., Vaughan v. Atkinson, 369 U.S. 527, 531 (1962). In Farrell and Vella, there is no indication that further improvement in the underlying condition was the purpose of the care there sought. Farrell, 336 U.S. at 512-13; Vella, 421 U.S. at 2-3.

The owner's second argument on this appeal is that the district court erred because the rehabilitation envisaged for Avery is directed in part to coping with muscle spasticity and

contractions. The owner says, with some support, that these are mere symptoms of the permanent brain injury. He then argues, blending this new argument into the old, that this shows that curative treatment is no longer available and that any further expenditure for Avery's rehabilitation is not properly one for maintenance and cure.

But Avery's doctors clearly opined that he could make further cognitive improvement as a result of treatment--not just by the passage of time--and their testimony may also suggest that even his muscle ailments can be permanently lessened. Certainly evidence as to the former supports the district court's finding that "further rehabilitation would be more than simply palliative, and would improve his medical condition." In re RJF, 261 F. Supp. 2d at 105. This is enough to support an award of maintenance and cure in aid of permanent improvement short of a complete cure.

Of course, the owner might have tried to distinguish between curative treatment still possible and accompanying palliative measures, and then argued that the cost of palliation offered in the course of treatment should be segregated and excluded from the owner's obligation. Some segregation would be silly--imagine excluding pain medicine from the setting of a broken bone--but perhaps in some settings a distinction might be drawn. Such a distinction could matter because maintenance and cure is exempt from the limitation of liability rules in admiralty.

<u>Brister</u> v. <u>A.W.I., Inc.</u>, 946 F.2d 350, 360-61 (5th Cir. 1991); <u>see also</u> Gilmore & Black, <u>The Law of Admiralty</u>, at 901-02 (2d ed. 1975).

However, in this court the owner has adopted an all or nothing approach (although it appears that it did attempt to make a segregation argument in the district court). It is not our task to devise alternative arguments that have not been pressed on appeal. Indeed, such a segregation argument in this case would involve both legal and factual issues of some complexity which neither side has briefed.

Similarly, the owner's claim that the maintenance and cure award should be curtailed because Avery was allegedly eligible for Medicare was not presented in timely fashion in the district court; before the hearing, the owner argued only that medical insurance would cover <u>palliative</u> care, adding tersely that Avery was "also entitled to Medicare or Medicaid." The present claim was raised only in a closing brief intended to sum up <u>after</u> the hearing and not to raise new issues. Thus this argument too must await another day.

<u>Affirmed</u>.