**Petition of RJF INTERNATIONAL CORPORATION for Exoneration from or Limitation of Liability, Civil and Maritime.**

No. C.A. 01–588S.

United States District Court,
D. Rhode Island.

Sept. 2, 2004.

Robert Edward Collins, Thomas E. Clinton, Clinton & Muzyka, P.C., Boston, MA, Michael Richard Hagopian, Warwick, RI, for Plaintiffs.

John S. Foley, Jennifer Anne Hayes, Decof & Decof P.C., Providence, RI, John W. Merting, P.A., Gulf Breeze, FL, Gabriella G. Gaal, Carroll, Kelly & Murphy, Providence, RI, Law Offices of Dennis J. Roberts II, Providence, RI, For Claimant.

## ORDER

SMITH, District Judge.

Before the Court is the motion of Claimant Kimberly M. Hanna ("Claimant") to Compel Maintenance and Cure payments from Petitioner RJF International Corporation ("Petitioner" or "RJF"). The payments are sought to cover expenses incurred in connection with the medical treatment of Claimant's son, James Avery ("Avery"). RJF responded to the Motion by filing an Opposition, as well as by filing a Motion to Terminate its Maintenance and Cure Obligation to Avery. This is the third time the parties have come before this Court on the issue of maintenance and cure benefits since RJF initiated this admiralty action on December 12, 2001, in an effort to limit its liability under Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. *See also* Limitation of Vessel Owner's Liability Act, 46 U.S.C. app. § 181 *et seq.* (2004).[1]

In the Motion to Compel currently before the Court, Claimant contends that RJF has failed to pay cure benefits relating to certain previously incurred medical bills.[2] Specifically, Claimant contends that RJF has failed to make cure payments relating to a surgery that Avery underwent to relieve his contractures[3] and spasticity.[4] Additionally, Claimant contends

---

1. RJF first sought to terminate its maintenance and cure obligation because Avery had reached the point of maximum cure due to the permanency of his medical condition. *In re RJF Int'l Corp.*, 261 F.Supp.2d 101, 106–07 (D.R.I.2003)("*RJF I* "), aff'd 354 F.3d 104 (1st Cir.2004). This court held that the evidence with which it had been presented did not reveal that Avery had reached the point of maximum medical recovery. *Id.* at 106. RJF next moved to terminate its maintenance and cure obligation based upon Avery's eligibility for Medicare. RJF argued that Medicare is the functional equivalent of medical treatment formerly provided to injured seamen at Public Health Service Hospitals. Since eligibility for such treatment at Public Health Service Hospitals (when they existed) terminated a claimant's right to maintenance and cure, the same result should logically follow from Avery's eligibility for Medicare. In a written opinion, *In re RJF Int'l Corp.*, 332 F.Supp.2d 458 (D.R.I. 2004) ("*RJF II* "), this Court disagreed with RJF's argument because, even if Medi-

care is the functional equivalent of care formerly provided at the Public Health Service Hospitals, the Medicare Secondary Payor provisions bar the U.S. Department of Health and Human Services from providing Medicare payments when other payors (in this case, RJF or its insurer) are obligated to make payments. 42 U.S.C. 1395y(b)(2).

2. Initially, the parties also disagreed over RJF's obligation to make certain maintenance payments, but those issues were resolved by agreement of the parties prior to the hearing on this motion.

3. Contractures are limitations in the range of motion of a joint resulting from tight muscles and tight tendons. Stedman's Medical Dictionary 405 (27th ed.2000).

4. Spasticity is increase in muscle tone while the muscles are at rest, often the result of concentrated muscle spasms. *Id.* at 1662.

that RJF has failed to make cure payments for a Blue Cross/Blue Shield of Florida subrogation claim that relates to Avery's admissions to Newport Hospital and Rhode Island Hospital immediately following the accident.

A. *Payments Relating to the Surgery*

In support of its decision to withhold cure payments relating to the surgery, RJF contends that the surgery to relieve Avery's contractures and spasticity was palliative in nature, as opposed to curative, and therefore is not part of its cure obligation. Courts have held that a shipowner is only responsible for treatment that is curative in nature, and not for medical care that is solely palliative such as the alleviation of pain and discomfort. *RJF I,* 261 F.Supp.2d at 104 (citing *Cox v. Dravo Corp.,* 517 F.2d 620, 626 (3d Cir.1975)). RJF relies on the First Circuit's opinion affirming *RJF I,* which discussed this distinction, 354 F.3d at 107. While the First Circuit held that there was sufficient evidence for this Court to conclude that Avery had not yet reached maximum medical improvement, it recognized the difference between palliative treatment and curative treatment: "Of course, [RJF] might have tried to distinguish between curative treatment still possible and accompanying palliative measures, and then argued that the cost of palliation offered in the course of treatment should be segregated and excluded from [RJF]'s obligation." 354 F.3d at 107.

Based on the First Circuit's palliative/curative distinction, RJF claims that even though a claimant may not have yet reached maximum medical recovery (and therefore would still be entitled to cure payments), that does not entitle a claimant to recover payments for treatments that solely relieve the symptoms of an injury. Here, RJF argues that the surgery to relieve the spasticity and contractures is just that—a procedure that was intended not to cure those conditions, but merely to relieve Avery of the symptoms of contractures and spasticity.

■ RJF reads too much into the First Circuit's discussion. In order to qualify as "curative" under existing case law, the surgery for the contractures and the spasticity does not need to cure those problems completely and permanently. Instead, to be considered "curative," the surgery must merely improve the contractures and spasticity. Here, even though Avery's spasticity and contractures are ultimately incurable, the seriousness of those conditions can be lessened and Avery's condition improved.

■ RJF argues that it is Claimant's obligation to prove that the surgery was curative in nature. Although it is unclear whether Claimant must meet this burden, the issue was addressed in Claimant's response to RJF's first motion to terminate maintenance and cure payments. In *RJF I,* this Court noted that Dr. David E. LeMay clearly stated in his deposition that Avery's admission to an inpatient rehabilitation clinic to deal with the contractures would be more than palliative. 261 F.Supp.2d at 105. If rehabilitation for the contractures was acceptable in *RJF I,* it is difficult for this Court to understand how surgery designed to alleviate permanently the effect of the contractures would not be deemed curative. Indeed, following the surgery, it is apparent that Avery is able to stand—a clear improvement from his pre-surgery state. (Claimant's Suppl. Mem. at 6, 7.) Moreover, Avery's toes are no longer "clawed" (*id.* at 8) and his susceptibility to urinary tract infections and skin breakdown has been reduced (*id.* at 5). There was no evidence produced by RJF that these measures were merely temporary improvements or procedures

designed only to create a more comfortable state. Thus, the evidence provided by Claimant stands unrebutted.

## B. *Payments to Blue Cross/Blue Shield*

On or about July 27, 1999, Claimant obtained health insurance from Blue Cross/Blue Shield (the "Policy") for Avery.[5] Claimant purchased the insurance with her own funds by personal check, and executed an Automatic Payment Option Authorization Agreement in order to pay for future premiums on the Policy. Until Avery became eligible for Social Security, the bank account from which the premiums were automatically deducted was funded by Claimant. However, after Avery became eligible for Social Security benefits, the bank account was funded by his Social Security benefits. Avery is the named owner and beneficiary of the Policy. (Stipulated Ex. L3.) The Policy has a lifetime coverage cap of $1,000,000. (*Id.*) The Policy also contains a subrogation provision, which requires the policyholder (in this case, Avery) to reimburse Blue Cross/ Blue Shield for medical expenses it has covered that may also be covered by a later settlement or judgment. (Stipulated Ex. L1, L3.)

After treating Avery immediately following the accident, Rhode Island Hospital and Newport Hospital submitted charges relating to that treatment as claims under the Policy.[6] Blue Cross subsequently processed the claims and paid the medical providers for the treatment, which resulted in a reduction of Avery's lifetime cap under the Policy.[7] Claimant contends that RJF, as part of its cure obligation, should reimburse Blue Cross/Blue Shield for its payments to the medical care providers, which would result in Avery's insurance cap being restored to its original amount.

 RJF argues, however, that it is not obligated to reimburse Blue Cross/Blue Shield (and therefore Avery as the holder of the Policy), because there is no evidence that Avery purchased the Policy with his funds and, as a result, incurred an "actual expense." RJF relies on the maintenance and cure principle that a shipowner will not be required to pay for medical care that is furnished at no expense to the injured seaman. *E.g., Bavaro v. Grand Victoria Casino,* No. 97 C 7921, 2001 WL 289782, *7 (N.D.Ill. Mar.15, 2001) (collecting cases). RJF submits that the evidence shows that the insurance premiums have been paid for either by Avery's mother (prior to Avery's eligibility for Social Security) or from Avery's Social Security benefits.

 Claimant contends that the bank account from which the funds are drawn is

5. At the time Claimant purchased the insurance, Avery was a minor and therefore unable to enter into a binding contract under Florida law.

6. The parties disagree over why the charges were submitted to Blue Cross/Blue Shield under the Policy, as opposed to RJF as part of its cure obligation. RJF contends that it was Claimant that instructed the hospitals to submit the charges under the Policy, instead of RJF. Claimant, meanwhile, contends that officers and/or employees of RJF are responsible for the charges being submitted to Blue Cross/ Blue Shield. (Claimant's Suppl. Mem. at 10.) This dispute, however, has no bearing on who is responsible for the costs, and therefore will be left unresolved.

7. Although the claims submitted under the Policy were substantial, the subrogation claim originally was only $1,251.92. The expenses incurred by the medical care providers are actually much higher, but because they were "preferred providers" Avery's charges are significantly limited under Blue Cross/Blue Shield's "Preferred Provider" network. The lifetime cap, however, is not reduced by the subrogation amount, but by the actual cost incurred.

funded by Avery's Social Security benefits, and therefore provides evidence that Avery incurs an expense. It cannot be disputed, however, that Avery was not receiving Social Security benefits at the time his mother purchased the Policy, nor was he receiving Social Security benefits at the time he was injured. Consequently, there is no evidence that Avery was paying for the Policy at the time he was injured. In fact, the evidence is to the contrary—that his mother paid the premiums on the policy until the bank account became funded by the Social Security benefits. Accordingly, this Court holds that Claimant is not entitled to reimbursement for payments to Blue Cross/Blue Shield relating to the treatment at Newport Hospital and Rhode Island Hospital because those costs were incurred at no expense to Avery. However, this Court does hold that Claimant is entitled to reimbursement for payments of any out-of-pocket expenses paid to Blue Cross/Blue Shield to the extent that the payments were made from the account *after* it became funded by Avery's Social Security benefit (or by Avery in some other manner).[8]

### C. *Attorney's Fees*

 As part of its Motion to Compel, Claimant seeks attorney's fees and costs due to RJF's alleged intentional delay in making the maintenance and cure payments. Because this Court finds that RJF's actions were not callous, willful, or recalcitrant, Claimant's request for attorney's fees is denied. *See Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1051 (1st Cir.1973)(holding that a claimant must prove the shipowner was "callous, willful, or recalcitrant in withholding [maintenance and cure] payments" in order to receive an award of attorney's fees and costs).

This is a very difficult and emotional case for Claimant and an expensive one for Petitioner. The parties have able and forceful advocates who are trying to protect their clients' interests, while behaving professionally towards one another. Where the stakes are very high, as they are here, no doubt there will be times when disagreements erupt over payments for care and treatment. Nevertheless, all parties are reminded that this Court expects that its orders will be followed swiftly and completely and that all counsel will cooperate fully with each other to that end.

Therefore, for the foregoing reasons, the Court hereby ORDERS as follows:

(1) Claimant's Motion to Compel cure payments with respect to the surgeries for the contractures is GRANTED;

(2) Claimant's Motion to Compel cure payments with respect to the Blue Cross/Blue Shield Policy is DENIED, to the extent that it seeks reimbursement for treatment covered by the Policy prior to Avery's eligibility for Social Security benefits;

(3) Claimant's Motion to Compel cure payments with respect to the Blue Cross/Blue Shield Policy is GRANTED, to the extent that it seeks reimbursement for treatment covered by the Policy following Avery's eligibility for Social Security benefits; and

(4) Claimant's request for attorney's fees and costs is DENIED.

IT IS SO ORDERED.

---

8. This Court takes the position that while it can order RJF to make certain payments to Claimant for out-of-pocket expenses relating to the Policy, it has no authority to order RJF to make any payments to Blue Cross/Blue Shield since it is not a party to this action.